NICOLÁS VEGA SEGARRA, JOSÉ L. MÁS, JUAN RODRÍGUEZ MIRANDA y JOSÉ SUAU, demandantes y apelados, *v.* PUERTO RICO RAILROAD AND TRANSPORT COMPANY, demandada y apelante.

Número 11296.

*Sometido:* 1 de marzo de 1955. *Resuelto:* 18 de junio de 1956.

*José Luis Novas,* abogado del síndico de la apelante; *Luis Blanco Lugo* y *Canales & Segarra,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR SIFRE emitió la opinión del Tribunal.

La cuestión envuelta es si erró el Tribunal Superior, Sala de San Juan, al dictar sentencia sumaria contra Puerto Rico Railroad and Transport Company, la apelante, condenándola a pagar a los apelados ciertas pensiones reclamadas por éstos.

En agosto de 1947, la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico, a la que en lo sucesivo llamaremos Corte de Distrito, aprobó las peticiones

de American Railroad Company of Porto Rico, y de Compañía de los Ferrocarriles de Puerto Rico, para reorganizarse de conformidad con el Capítulo X de la Ley de Quiebra, 11 U.S.C.A. sec. 501 et seq., nombrando un síndico, *Trustee*, para que se hiciera cargo de las propiedades de las corporaciones deudoras. Los acreedores fueron notificados de que debían presentar sus reclamaciones en o antes de 8 de enero de 1948. Los demandantes en el caso de autos, ex-empleados de American Railroad Company of Porto Rico, a la que en adelante llamaremos American Railroad, instaron las suyas en 31 de octubre de 1951, reclamando pensiones de acuerdo con un sistema de retiro establecido por esa empresa para beneficio de sus obreros. Las reclamaciones fueron desestimadas por orden de la Corte de Distrito de 16 de septiembre de 1953, por la razón de que habiendo quedado consumado el plan de reorganización en 27 de octubre, 1951, y entrado en vigor en esa fecha el decreto final de dicha corte aprobando el plan, ésta carecía de jurisdicción para conocer de nuevas reclamaciones. En la orden, sin embargo, se hizo constar que no se estaba resolviendo si "los peticionarios tienen o no reclamaciones válidas que puedan hacerse efectivas mediante acción o acciones independientes en contra de la compañía reorganizada, Puerto Rico Railroad and Transport Company bajo los contratos y el plan conjunto enmendado de reorganización mencionado en el decreto final . . .". Los demandantes más tarde iniciaron este pleito contra la compañía reorganizada.

Alegaron en la demanda que American Railroad había establecido un sistema de pensiones en el convenio colectivo concertado en 16 de noviembre de 1945, con la Unión de Obreros Unidos de Ferrovías de Puerto Rico, que constituía un contrato a ser ejecutado (*executory contract*), obligatorio para la demandada, por ser sucesora de American Railroad y haberlo asumido en los procedimientos de reorganización; que los demandantes de acuerdo con dicho convenio tenían derecho a pensiones vitalicias pagaderas mensual-

mente en las cantidades mencionadas en la demanda, en vista de que al ser despedidos de sus empleos en el año 1949, por el Síndico nombrado por la Corte de Distrito, habían prestado a American Railroad servicios continuos por más de veinticinco años y cumplido más de cincuenta años de edad, requisitos exigidos por el sistema de pensiones para tener derecho a ellas, y que las devengadas hasta 30 de septiembre de 1953, y no satisfechas ascendían a la suma total de $11,233.27, que la demandada venía obligada a pagar.

Puerto Rico Railroad and Transport Company negó todas las alegaciones de la demanda. Los demandantes presentaron entonces una moción solicitando que se dictara sentencia sumaria, alegando que "no había una controversia real sobre ningún hecho material". Basaron la moción en una opinión dictada por la Corte de Distrito en 20 de marzo de 1952, en los procedimientos de reorganización, con respecto a ciertas reclamaciones que habían presentado otros ex-empleados de American Railroad en cobro de pensiones, y en una estipulación concertada en dichos procedimientos en 2 de septiembre de 1953, con referencia a las reclamaciones de los aquí demandantes, desestimadas, como hemos dicho, por falta de jurisdicción. La demandada se opuso a que se pronunciara la sentencia, porque: (A) las reclamaciones habían sido instadas tardíamente en tales procedimientos; (B) no se había presentado copia del decreto final, de la Corte de Distrito aprobando el plan de reorganización; (C) no constaba en los documentos unidos a la moción que las reclamaciones hubieran sido aprobadas por la Corte de Distrito, apareciendo por el contrario que habían sido desestimadas; (D) carecía de jurisdicción el tribunal a quo para dictar la sentencia, en vista de que las reclamaciones tuvieron su origen en procedimientos iniciados a "virtud... de la Ley Federal de Quiebra, correspondiendo... esta jurisdicción exclusivamente a la Corte de Distrito".

Esas cuestiones fueron resueltas en contra de Puerto Rico Railroad and Transport Company, llegando la Sala de

instancia a la siguiente conclusión: "Se comprueba debidamente mediante la referida estipulación y la jurisprudencia correspondiente, los siguientes hechos fundamentales alegados en la demanda, a saber: que la demandada es la sucesora de American Railroad Company of Porto Rico a virtud del procedimiento de reorganización llevado a cabo de acuerdo con el Capítulo X de la Ley de Quiebra; las fechas correspondientes al comienzo y terminación del empleo de los demandantes con las compañías antecesoras de la demandada; que de acuerdo con dichos períodos de trabajo cada uno de los demandantes contaba a la fecha de su despido más de 25 años de servicio continuo y había cumplido más de 50 años de edad; que las pensiones mensuales a que los demandantes son acreedores de acuerdo con el sistema de pensiones de referencia son las siguientes: Nicolás Vega Segarra, $88.14; José L. Más, $63.60; Juan Rodríguez Miranda, $44.77; Gabriel Suau, $40.86; que hasta septiembre 30 de 1953 se les adeudaba la suma de $11,233.27; que dichas pensiones son de carácter vitalicio; que las antecesoras de la demandada establecieron dicho sistema de pensiones mediante un Convenio Colectivo firmado en 16 de noviembre de 1945; que dicho plan de pensiones constituye un contrato ejecutorio (*executory contract*), específicamente asumido por la demandada, (en los procedimientos de reorganización)". En su consecuencia el tribunal pronunció la sentencia condenando a la demandada a satisfacer la suma reclamada por los demandantes, así como a continuar pagándoles pensiones de acuerdo con lo pactado en el convenio con relación al sistema de retiro.

La apelante ataca dicha sentencia y señala dos errores para pedirnos que la revoquemos. Sostiene en el primer señalamiento que se equivocó el tribunal a quo al resolver que había quedado demostrada la inexistencia de "una controversia genuina de hecho a ser juzgada...y que...procedía la sentencia sumaria...", apuntamiento que pasamos a considerar. Después de llamar nuestra atención a ciertos

principios relacionados con la interpretación de la Regla
56 (a) (c) de las de Enjuiciamiento Civil, de los que no po-
demos discrepar, nos dice que la estipulación de 2 de sep-
tiembre de 1953, no la obliga "porque no fué parte ni con-
currió en ella", aseveración que descansa en el hecho de que
el otro abogado que, en adición a los de los apelados, firmó la
estipulación, lo hizo consignando debajo de su nombre, lo si-
guiente: *"Attorney for Trustee"*. Aunque es perfecta-
mente cierto que así fué suscrita dicha estipulación, no po-
demos estar de acuerdo con la apelante. El contexto de
aquélla, y otras circunstancias reveladas por los autos, nos
llevan a la conclusión de que la estipulación en efecto obliga
a la apelante. En ella se hizo constar, en términos que no
dejan lugar a dudas, que tanto el síndico, como la compañía
reorganizada, Puerto Rico Railroad and Transport Com-
pany, sostenían que las reclamaciones de los apelados eran
inválidas, siendo evidente que ese aserto no era del síndico
únicamente, quien después de todo carecía de verdadero in-
terés en que no prosperaran las reclamaciones, ya que había
sido relevado del cargo y la sindicatura tocado a su fin, se-
gún aparece de la propia estipulación, sí que también de la
compañía reorganizada, parte realmente interesada en que
no tuvieran éxito los apelados, puesto que de haberlo te-
nido, a ella hubiera correspondido pagar las pensiones; y
no podemos presumir que el abogado que suscribió la esti-
pulación hablara a nombre de la citada empresa sin tener
autoridad para hacerlo. Esa conclusión está fortalecida por
la posición adoptada por Puerto Rico Railroad and Transport
Company al oponerse, por conducto del mismo letrado que
firmó dicho documento, a que se dictara la sentencia sumaria.
Las razones que adujo entonces para que no fuera pronun-
ciada demuestran que aceptó y admitió que estaba obligada
por los términos de la estipulación, y que partiendo de esa
premisa fué que expuso los motivos que a su entender im-
pedían que se concediera el remedio interesado por los
apelados.

Si le reconociéramos mérito a la cuestión que suscita la apelante, por primera vez en apelación, mediando las circunstancias que concurren en el caso de autos, quedaría establecido un precedente obviamente nocivo para el buen éxito del procedimiento de sentencia sumaria. La estipulación revela, como se ha indicado ya, que la aseveración que en ella se hizo en el sentido de que las reclamaciones eran inválidas, fué hecha tanto por el síndico como por la compañía reorganizada. Esta sabía que los apelados descansaban en lo convenido en la estipulación para solicitar la sentencia y que alegaban que había sido firmada "por las partes en el presente recurso y radicada ante la Corte Federal..." Esas circunstancias eran de por sí suficientes para que Puerto Rico Railroad and Transport Company, de entender que no estaba obligada por la estipulación, presentara evidencia indicativa de que no había "concurrido en ella", como tardíamente sostiene ahora. Nada hizo en ese sentido, y la corte a quo dió correctamente por sentado que no había cuestión alguna en cuanto a que las admisiones hechas en el citado documento obligaban a la apelante.

Otro de los fundamentos aducidos por Puerto Rico Railroad and Transport Company para impugnar la sentencia es que los apelados no justificaron que el convenio colectivo estableciendo el sistema de pensiones estuviera en vigor cuando esa compañía "en virtud del Decreto Final dictado en 15 de junio, 1950, asumió al consumarse el plan de reorganización en 27 de octubre, 1951, los contratos ejecutorios (*executory contracts*), celebrados por el síndico y por las corporaciones deudoras". Que el citado convenio colectivo estaba vigente cuando la apelante contrajo la obligación de cumplir con esos contratos, es un hecho que quedó suficientemente comprobado con los documentos que se unieron a la moción solicitando la sentencia. Uno de ellos fué, como se ha visto, la estipulación concertada en 2 de septiembre de 1953 en los procedimientos de reorganización—aproximadamente dos años después de haber entrado en vigor el

decreto final—con relación a la reclamación que habían instado allí los apelados en cobro de las mismas pensiones que son objeto de controversia en el presente litigio. En dicha estipulación la compañía reorganizada, Puerto Rico Railroad and Transport Company, admitió que el convenio colectivo estaba en vigor, aun cuando sostuvo—por razones con ninguna de las cuales puso en tela de juicio el hecho de la vigencia del convenio—que la reclamación no debía prosperar por ser inválida, aceptando, sin embargo, que de ser válida, los apelados "tendrían que ser considerados con respecto a edad y años de servicio, cualificados y con derecho" a pensiones, pagaderas mensualmente, desde 1949, año en que dichos apelados fueron despedidos por el síndico, derecho que indudablemente se les reconocía bajo los términos del convenio colectivo obligando a American Railroad a mantener el sistema de retiro. ([1])

La opinión de la Corte de Distrito—de 20 de marzo, 1952—comprueba que el convenio colectivo nunca fué repudiado por esa corte. Y el plan de reorganización, del que en la citada opinión se transcribe la parte pertinente, de-

---

([1]) Lo que sigue es parte del contenido de la estipulación de 2 de septiembre de 1953:

"Con fecha octubre 31, 1951, los peticionarios presentaron su reclamación en estos procedimientos para obtener el pago de una pensión a la que alegaban tener derecho bajo el plan de retiro provisto en el convenio colectivo entre la deudora American Railroad y sus empleados, que dispone como sigue:...'La compañía mantendrá un sistema de jubilación para todos los empleados que hayan ingresado en la misma de cuarenta y cinco años de edad o menos, en la siguiente forma y condiciones: Entendiéndose, que cualquier empleado que haya cubierto los requisitos de jubilación, podrá continuar trabajando si así lo desea, y si la compañía lo cree conveniente: (1) Todos los empleados de cualquier categoría que habiendo estado al servicio de la Compañía por no menos de veinte (20) años consecutivos cumplan 65 años de edad; (2) Todos los empleados de cualquier categoría que hubieren servido a la Compañía por un período de veinte y cinco (25) años consecutivos y cuya edad sea de cincuenta (50) años o más; (3) Todos los empleados de cualquier categoría que habiendo estado al servicio de la Compañía por no menos de veinte (20) años consecutivos o más, se encuentren imposibilitados por enfermedad de continuar trabajando, previa presentación de un certificado médico resultado de un examen físico completo, y continuará disfrutando de

muestra que tampoco fué· rechazado por los términos del plan. En el decreto final se impuso a la apelante la obligación de asumir todos los contratos a .ser ejecutados (*executory contracts*) entre los cuales estaba el convenio colectivo. De acuerdo con el Capítulo X de la Ley de Quiebra, contratos de esa naturaleza pueden ser repudiados por la corte que conozca de los procedimientos de reorganización, sec. 116(1) de dicha Ley, o por el plan de reorganización, sec. 216(4). Como se ha visto, ni lo uno ni lo otro ocurrió en·el procedimiento de ·reorganización de las corporaciones deudoras.

Sostiene Puerto Rico Railroad and Transport Company que los apelados no presentaron el decreto final ni el convenio colectivo, cuando pidieron la sentencia, y que de haberlo hecho "hubiera resultado que el...Convenio había expirado desde el 31 de octubre de 1947, y que por lo tanto no fué uno de los contratos...asumidos" por ella, llamando nuestra atención en su alegato a la cláusula IX del convenio,

dicha jubilación mientras dure tal incapacidad.' Los empleados jubilados recibirán después que lo sean, como pensión, el 1% del promedio de las pagas mensuales recibidas durante los diez años precedentes a su jubilación, multiplicado por el número de años de servicio continuo que haya tenido en la Compañía, pero la cantidad que resulte de esta operación no será nunca menor de $15.00 mensuales, ni excederá del 40% del sueldo que disfrute dicho empleado en el momento de su jubilación". (Esas disposiciones del convenio colectivo son las que se copian en la demanda.) "Si la reclamación de los peticionarios constituye una reclamación válida cada uno y todos los peticionarios tendrán que ser considerados con respecto a la edad y años de servicios, cualificados y con derecho a pensión como sigue:

| Nombre | Pensión Mensual | Pagadera Desde |
|---|---|---|
| Nicolás Vega Segarra | $88.14 | Nov. 18, 1949 |
| José Luis Más | 63.60 | Nov. 14, 1949 |
| Juan Rodríguez Miranda | 44.77 | Nov. 12, 1949 |
| Gabriel Suau | 40.86 | Dic. 27; 1949" |

(Las mismas que se reclaman en la demanda.) "El Síndico ·y la compañía reorganizada sostienen que la reclamación de los peticionarios no es válida porque fué radicada tardíamente; y porque no proveyendo el decreto final pára su pago, ha sido extinguida bajo los términos del mismo Decreto Final. También porque bajo los términos de dicho Decreto final él ha sido relevado, su sindicatura terminada y cerrado el caso de la deudora...".

en la que se acordó que ésta estaría en vigor hasta la fecha que indica la apelante. Ello en nada le ayuda, porque consta en dicha cláusula que también se pactó que cualesquiera de las partes podría solicitar la revisión de todo el convenio no más tarde de 1ro. de septiembre de 1947, y que éste continuaría vigente durante las negociaciones o hasta que otro fuera firmado. En vista de lo que demuestran los documentos que ofrecieron los apelados con su moción, no podemos reconocerle mérito alguno a la contención de que el convenio colectivo expiró antes de la fecha en que entró en vigor el decreto final y quedó consumado el plan de reorganización. El contenido de esos documentos no fué controvertido por la apelante, la que no hizo el menor esfuerzo por desvirtuar lo que ellos comprobaban. Cuando una parte presente declaraciones juradas u otros documentos admisibles, en apoyo de una solicitud de sentencia sumaria, que de ser creídos justificarían el pronunciamiento de la sentencia, la otra parte debe por lo menos ofrecer alguna evidencia que pueda tener el efecto de cambiar el resultado, *Radio City Music Hall Corp.* v. *United States*, 135 F.2d 715; *Gifford* v. *Travelers Protective Ass'n*, 153 F.2d 209, y si no lo hace, no le deja al tribunal otra alternativa que la de dictar la sentencia, norma que lejos de estar reñida con la doctrina establecida en *Sánchez* v. *De Choudens*, 76 D.P.R. 1, está en perfecta armonía con ella, de la que sin duda es secuela necesaria.([2])

Asevera la apelante que "en lo que a pensiones concernía lo único que asumió . . . específicamente fué la responsabilidad de cualquier sentencia final que dictara la Corte de Apelaciones de los Estados Unidos para el Primer Cir-

---

([2]) En *Sánchez* v. *De Choudens*, supra, resolvimos que "cuando se solicita sentencia sumaria basada en declaraciones juradas o en documentos admisibles en evidencia y la contra-parte se cruza de brazos y nada hace en oposición a tal solicitud, la misma debe ser declarada con lugar, siempre que las declaraciones juradas u otros documentos radicados, demuestren que no existe controversia alguna sobre ningún hecho material".

cuito, o en su caso, el Tribunal Supremo de los Estados Unidos", en cuanto a la apelación que había sido presentada por otros ex-empleados de American Railroad contra la resolución de la Corte de Distrito, declarando sin lugar las reclamaciones por pensiones instadas por aquéllos. En el decreto final de 15 de junio de 1950, se dispuso con referencia a la sentencia que pudiera dictarse con relación a dicha apelación que "la compañía reorganizada también asumirá cualquier sentencia final que pueda ser pronunciada por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, o por la Corte Suprema de los Estados Unidos, según sea el caso, en virtud de la apelación que ha sido presentada contra el fallo de esta corte en el asunto de ciertos reclamantes de pensiones, cuyas reclamaciones fueron denegadas por esta Corte . . ." Pero no fué ésa, sin embargo, la única obligación que contrajo Puerto Rico Railroad and Transport Co. con respecto al pago de pensiones bajo el sistema de retiro establecido en el convenio colectivo. Tanto en virtud de los términos del plan de reorganización, como de las disposiciones del decreto final, también asumió la obligación de cumplir con todos los contratos a ser ejecutados (*executory contracts*), entre los cuales, según hemos dicho, estaba el convenio colectivo. Es evidente, por tanto, que carece de méritos la contención de la apelante al efecto de que lo único que asumió con relación al pago de pensiones fué la "responsabilidad de pagar cualquier sentencia final" que se dictara "en relación con la apelación interpuesta por ciertos ex-empleados del ferrocarril...".(³)

Nos dice Puerto Rico Railroad and Transport Company que de haber estado vigente el convenio colectivo cuando

---

(³) Daniel Vallejo y otros ex-empleados de American Railroad presentaron las reclamaciones a que hemos hecho referencia, declaradas sin lugar en primera instancia por la Corte de Distrito. La Corte de Apelaciones de los Estados Unidos para el Primer Circuito revocó en *Vallejo et al.*, v. *American R. Co. of Porto Rico*, 188 F.2d 513, resolviendo que el sistema de retiro era obligatorio para American Railroad y que todos los empleados cubiertos por dicho sistema adquirirán el derecho a pensión una vez que hubieran cumplido la edad y prestado los años de servicio

quedó consumado el plan de reorganización en 27 de octubre de 1951, no estaría obligada a pagar pensiones a los apelados, porque desde que éstos fueron despedidos en el año 1949 "su derecho a la pensión establecida por el Convenio..., se convirtió en una deuda (del síndico), por haber cumplido 50 años de edad y haber servido a la compañía (American Railroad) durante un período de 25 años consecutivos". Arguye que de no haber expirado dicho convenio en 1947, sólo estaría obligada a pagar pensiones a los que siendo empleados de la apelante, cumplieran con los requisitos de edad y años de servicio exigidos por los pactos referentes al sistema de retiro. No podemos estar de acuerdo con esa contención. Cuando los apelados fueron despedidos por el síndico, ya tenían la edad y los años de servicio exigidos por el sistema de retiro, para ser pensionados, hecho comprobado por lo que se convino en la estipulación de 2 de sep-

exigidos por aquél. A la sentencia que pudiera ser pronunciada en esa apelación fué a la que se hizo referencia en la parte del decreto final que sirve de base a la contención de la apelante. Una vez recibido el mandato de la Corte de Apelaciones, la Corte de Distrito procedió a dictar la opinión de 20 de marzo de 1952. En ella declaró con lugar las reclamaciones de esos ex-empleados y dictó sentencia condenando a Puerto Rico Railroad and Transport Company a pagar las pensiones reclamadas por ellos. Dicha sentencia fué confirmada en *American Railroad Company of Porto Rico et al.* v. *Daniel Vallejo et al.*, 202 F.2d 149. La opinión de 20 de marzo, 1952, en su parte pertinente lee así:

"Este caso está ahora ante la Corte a virtud del mandato de la Corte de Apelaciones para el Primer Circuito, con relación a una apelación de ciertos reclamantes contra la sentencia de esta Corte denegando las reclamaciones de los apelantes por pensiones de la American Railroad Company of Porto Rico. El Síndico sostiene que procede que se dicte sentencia únicamente por pensiones devengadas hasta junio 15, 1950, fecha del decreto final. Los reclamantes sostienen que tienen derecho a pensiones vitalicias, pagaderas mensualmente, en las cantidades estipuladas por las partes...Los convenios colectivos obligando a la Compañía a mantener un sistema de retiro, de aplicación a los reclamantes, *Vallejo et al.* v. *American Railroad Company of Porto Rico et al.*, 188 F.2d 513 (C.A. 1, abril 26 1951), *era un contrato a ser ejecutado (executory contract), nunca rechazado por la Corte,* (sec. 116(1), Capítulo X, Ley de Quiebra), *ni por el mismo plan de reorganización,* sección 216(4)...El Plan de Reorganización dice lo que sigue: 'A menos que fueren desaprobados o repudiados específicamente por la Corte de Distrito de Puerto Rico, la Compañía reorganizada asumirá todos los contratos a ser ejecutados

tiembre de 1952. Desde entonces cada uno de ellos adquirió el derecho a una pensión, *Vallejo et al.* v. *American Railroad Co. of Porto Rico*, supra, *vitalicia*, pagadera mensualmente, según se expuso en la estipulación. Con respecto a los apelados, la obligación impuesta por el convenio colectivo fué la de pagarles la pensión mientras vivieran, y esa obligación continuó existiendo, no obstante la terminación de los procedimientos de reorganización, y fué precisamente la que contrajo Puerto Rico Railroad and Transport Company cuando asumió el convenio, comprometiéndose a cumplir con todos los contratos a ser ejecutados (*executory contracts*), concertados por el síndico o por American Railroad. El derecho de los apelados no quedó convertido en una deuda del síndico como equivocadamente sostiene Puerto Rico Railroad and Transport Company, ni se extinguió en virtud del

---

(*executory contracts*), formalizados en el pasado por el Síndico, o por la corporación deudora'. El Decreto Final dispone que 'La Puerto Rico Railroad and Transport Company será considerada entonces la compañía reorganizada bajo el Plan Conjunto Enmendado de Reorganización aquí confirmado y dicha compañía entonces y allí asumirá todos los contratos a ser ejecutados (*executory contracts*), hasta ahora concertados por el Síndico o por las corporaciones deudoras. La Compañía reorganizada también asumirá cualquier sentencia final que pueda ser pronunciada por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, o por la Corte Suprema de los Estados Unidos, según sea el caso, en virtud de la apelación que ha sido presentada contra el fallo de esta Corte en el asunto de ciertos reclamantes de pensiones cuyas reclamaciones fueron denegadas por esta Corte ...'. A la luz de las anteriores disposiciones del decreto final, la Corte no puede convenir con la contención de que los derechos de estos reclamantes murieron con el decreto de junio 15, 1950. Ni puede la Corte resolver que las pensiones de los reclamantes se extinguieron con la American Railroad Company of Porto Rico. Es cierto que la terminación de los asuntos de dicha compañía era completa y que su Síndico como tal, ya no controlaba sus activos o las operaciones de la compañía. Pero su compañía sucesora, la Puerto Rico Railroad and Transport Company ha asumido las obligaciones de pagar las pensiones vitalicias en las sumas estipuladas ... La Corte de Apelaciones ha resuelto que los reclamantes estaban cubiertos por el plan de pensiones, y que éste era obligatorio; no fué repudiado por la Corte o por el plan; y, como contrato a ser ejecutado (*executory contract*), fué específicamente asumido por la compañía reorganizada, las peticiones de los reclamantes son por tanto declaradas con lugar y se dictará sentencia en contra de la compañía sucesora, Puerto Rico Railroad and Transport Company ...".

decreto final de 15 de junio, 1950, como también asevera. Esto mismo fué resuelto por la Corte de Distrito en su opinión de 20 de marzo de 1952, emitida con relación a las reclamaciones por pensiones que habían sido presentadas por Daniel Vallejo y otros ex-empleados de American Railroad, opinión que fué adoptada en su totalidad por la Corte de Apelaciones de los Estados Unidos para el Primer Circuito, al confirmarla en *American Railroad Company of Puerto Rico et al.* v. *Daniel Vallejo et al.*, supra.

Puerto Rico Railroad and Transport Company también ataca la sentencia por el fundamento de que "habiéndose reservado su jurisdicción la Corte Federal para hacer cumplir los términos de su Decreto Final...", el tribunal a quo carecía de "jurisdicción para intervenir en [la] reclamación objeto de esta acción. En nuestra opinión dicho tribunal tenía autoridad y poder para conocer del presente litigio. La Corte de Distrito no reconoció a la reserva a que alude la apelante el alcance que ésta le atribuye. En su orden de 16 de septiembre de 1953, correctamente decidió que desde el 27 de octubre de 1953, cuando quedó consumado el plan de reorganización, había dejado de tener jurisdicción para conocer de nuevas reclamaciones, *Continental Bank & Trust Co.* v. *Presbyterian Church*, 57 N.Y.S.2d 128; *Clinton Trust Co.* v. *John H. Elliot Leather Co.*, 132 F.2d 299; *In re Sherland Bldg. Corporation*, 29 F. Supp. 985; *In re Corona Radio & Television Corporation*, 102 F.2d 959, por lo que no podía considerar las instadas con posterioridad por los apelados, aunque sin resolver, como lo hemos dicho ya, si éstos tenían o no reclamaciones válidas que pudieran "hacer efectivas mediante . . . acción o acciones independientes contra la compañía reorganizada Puerto Rico Railroad and Transport Company...".(⁴)

---

(⁴) Por las razones expuestas por el tribunal a quo, no tiene importancia el que los apelados instaran sus reclamaciones en la Corte de Distrito después de haber vencido el término concedido por ésta para la presentación de reclamaciones, cuestión que suscitó la apelante en la Sala de instancia, pero en la que no ha insistido ante nos.

Es innecesario discutir el segundo señalamiento, en el que se alega que la corte sentenciadora incidió en error al condenar a la apelante al pago de las cantidades reclamadas en la demanda.

Convencidos, como lo estamos, de que no se equivocó la Sala de instancia al llegar a la conclusión de que en el caso de autos no existe ninguna controversia genuina de hecho a ser juzgada en juicio plenario, y que no erró al decidir adversamente a la apelante las cuestiones de derecho suscitadas por ésta, *procede la confirmación de la sentencia apelada.*

El Juez Presidente Sr. Snyder no intervino.