Encarnación Fuentes et al., demandantes y apelantes, *v.* Secretario de Hacienda, demandado y apelado.

*Número:* 12684 *Resuelto:* 24 de mayo de 1962

494

*Víctor Gutiérrez Franqui, Luis F. Sánchez Vilella, C. Morales, Jr., Federico Ramírez Ros, Juan E. Serrallés III,* abogados de los apelantes; *Hiram R. Cancio, Secretario de Justicia, Arturo Estrella, Secretario Auxiliar, Cándido Ceballos, abogado, Departamento de Justicia,* abogados del Secretario de Hacienda de Puerto Rico.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

I

En 18 de agosto de 1953 los apelantes Encarnación Fuentes, José Suárez Fuentes, y Johnny Suárez Miranda, menor

representado por su tutor Rafael Berríos Cabrera, alegando ser cónyuge supérstite y herederos de Marcial Suárez Suárez, intepusieron demanda de *injunction* en el Tribunal Superior, Sala de San Juan, contra el Secretario de Hacienda. Alegaron que el 5 de octubre de 1951 el Secretario tasó contribuciones sobre ingresos adeudadas por el causante Marcial Suárez Suárez, de la siguiente manera:

| | |
|---|---:|
| Año 1941—Recibo Núm. F-20012 por | $3, 667. 02 |
| Año 1942—Recibo Núm. F-300012 por | 3, 965. 03 |
| Año 1944—Recibo Núm. F-513421 por | 42, 897. 13 |
| Año 1945—Recibo Núm. F-611475 por | 35, 366. 36 |
| Año 1946—Recibo Núm. F-767535 por | 75, 381. 42 |
| Total: | $161, 276. 96 |

Que como herederos José Suárez Fuentes y Johnny Suárez Miranda estaban obligados por ley a pagar cualesquiera deudas del causante, y la demandante Encarnación Fuentes sería responsable del 50% de dichas deudas; que al hacer la imposición de deficiencias de la contribución adeudada, el Secretario no cumplió con lo dispuesto en la sección 57(a) de la Ley de Contribuciones sobre Ingresos que requiere una notificación preliminar a los contribuyentes y una notificación final, por correo certificado, de cuya notificación final pueden apelar al Tribunal Superior; que por no haber hecho el Secretario dichas notificaciones preliminares y finales la tasación de la contribución era nula e inválida. Que posterior a la tasación, sin mediar la notificación final que requiere la Ley, el Secretario procedió a anotar embargo sobre todas las propiedades de la Sucesión causando perjuicios en forma ilegal; que los demandantes carecían de remedio en ley por cuanto nunca estuvieron notificados formalmente ni recibieron notificación final de la cual pudieran acudir al Tribunal Superior; y que el remedio de pagar y solicitar reintegro no estaba a su alcance porque no tenían las sumas necesarias

para el pago de la contribución total; además, que el embargo impuesto por el Secretario no permitía a los contribuyentes el pleno goce y disfrute de sus propiedades y estaban siendo perjudicados adversamente por su actuación ilegal. Se solicitó que se decretara un auto de *injunction* ordenando al Secretario de Hacienda que anulara las órdenes de embargo y retirara del cobro los recibos antes mencionados; que procediera a notificar de acuerdo con la ley las deficiencias determinadas preliminarmente al causante Marcial Suárez Suárez en forma tal que permitiera a los demandantes litigar la validez de las mismas.

A la anterior demanda el Secretario interpuso una moción para desestimar alegando falta de jurisdicción en virtud de lo dispuesto en los incisos 3 y 7 del Art. 3 de la Ley Núm. 1 de 25 de febrero de 1946; y que los demandantes tenían un remedio en ley. Presentó también una moción solicitando sentencia sumaria a su favor invocando las alegaciones de los demandantes en el *caso I-301* iniciado por ellos en el Tribunal de Contribuciones de Puerto Rico, así como las conclusiones y el fallo emitido en dicho caso, y sosteniendo que dicho pleito constituía cosa juzgada de las cuestiones planteadas en la demanda de *injunction;* así como que los demandantes habían incurrido en incuria o demora en perjuicio del Secretario ya que de accederse a lo solicitado las deficiencias no podrían ser tasadas ni cobradas por haber prescrito las mismas.

Oídas las partes en cuanto a los planteamientos del Secretario, la Sala de instancia dictó fallo en 23 de diciembre de 1953 denegando la solicitud de *injunction.* Este fallo se revocó en *Fuentes* v. *Secretario de Hacienda*, 80 D.P.R. 203, por los fundamentos que se exponen en esa decisión. Dijimos en ella que era evidente que el Tribunal de instancia había dictado la sentencia por las alegaciones a base de la moción para desestimar, y no había considerado ni resuelto la moción sobre sentencia sumaria, y que al resolverse el recurso no estábamos considerando los méritos de las cuestiones plantea-

das por el Secretario en su moción de sentencia sumaria, debiendo resolverla la Sala sentenciadora.

## II

El recurso ahora ante nos toma el caso en esta segunda etapa, la cual giró fundamentalmente en torno al *caso I-301* ya mencionado. En este litigio los aquí demandantes y el otro heredero Juan Suárez Fuentes comparecieron al Tribunal de Contribuciones en demanda de 2 de noviembre de 1951 impugnando la contribución de deficiencia determinada por el Secretario al causante Marcial Suárez Suárez para los años 1943 y 1944. Alegaron que el causante había fallecido en 19 de diciembre de 1949 dejando como su Sucesión a los allí y aquí demandantes; que en 6 de febrero de 1950 la Corte de Distrito de San Juan había nombrado Administrador Judicial de los bienes del finado al heredero y albacea testamentario Juan Suárez Fuentes; que para la fecha de la muerte de Marcial Suárez el Secretario estaba investigando las planillas del causante de los años 1941 al 1946, ambos inclusive, habiéndose notificado como resultado de dicha investigación, al propio causante, deficiencias en las siguientes cantidades: 1941:—$11,511.56; 1942:—$26,332.76; 1943:—$85,332.27; 1944:—$67,926.05; 1945:—$75,006.79; y 1946:—$103,467.24.

Siguieron alegando que no estando conforme la Sucesión demandante con dichas deficiencias, solicitó la reconsideración de las mismas y después de varias vistas administrativas, negociaciones y conferencias con los agentes del Secretario se llegó a un acuerdo entre los demandantes y dichos agentes sobre la cantidad a pagar por deficiencias en cada uno de los años anotados. [Las contribuciones y sus recibos que los demandantes alegaron haber acordado y aceptado pagar son las mismas alegadas en la demanda de *injunction*, anteriormente especificadas.]

Continuaron exponiendo los aquí demandantes, como demandantes en el *caso I-301*, que en 18 de octubre de 1951 el

Secretario notificó a la Sucesión una deficiencia para el año 1943 en la cantidad de $25,721.29, y que dicha notificación era la resolución del Secretario en reconsideración de la deficiencia notificada para dicho año en 30 de noviembre de 1949, después de celebrada una vista administrativa. Que el Secretario exigió a los demandantes en ese entonces como un requisito previo para imponer las contribuciones que se habían acordado, que ellos renunciaran al derecho de que la tasación de dichas contribuciones les fuera notificada antes de que la contribución les fuera impuesta; y alegaron expresamente *que este acuerdo se refería a los años 1941, 1942, 1944, 1945 y 1946, y que por acuerdo mutuo de ambas partes el año 1943 había quedado sin liquidar en ninguna forma* debido a que el Secretario se había negado a admitir como deducibles ciertas partidas que demostraban pérdidas del contribuyente Marcial Suárez Suárez y que eran deducibles para el año 1943; que dichas pérdidas, además de enjugar la contribución para el año 1943, dejaban un remanente que el contribuyente tenía derecho a arrastrar para el año siguiente de 1944. Alegaron entonces que en esas condiciones ellos no habían hecho renuncia alguna en cuanto a la contribución impuesta para el año 1943, y habiendo acordado con el Secretario que acudirían al Tribunal para determinar la legalidad de dichas deducciones. Que al firmar la renuncia de la notificación en cuanto a la tasación para el año 1944 ellos habían hecho la salvedad de que la misma estaba condicionada a la resolución que pudiera recaer sobre el año contributivo de 1943, ya que habría necesariamente que arrastrar al año 1944 cualquier exceso en las pérdidas del año anterior.

De ahí en adelante los demandantes siguieron alegando en el *caso I-301* su derecho a deducir para el año 1943 deudas incobrables por $100,164.33 y a impugnar la deficiencia determinada para ese año. En una segunda causa de acción alegaron que el Secretario había impuesto una contribución para el año 1944 sin tomar en cuenta la forma condicional en

que ellos habían aceptado la tasación, sujeto a lo que resultara de la litigación del año 1943, y que por tal razón el demandado había violado el convenio con ellos en cuanto al referido año 1944. Solicitaron en esa demanda que se anulara la deficiencia para el año 1943 a base de la deducción reclamada de los créditos incobrables, y que se dejara sin valor y efecto la tasación del año 1944 como consecuencia del arrastre de dichas pérdidas.

La Sala de San Juan del Tribunal Superior falló el *caso I-301* en 13 de febrero de 1953 por voz del Juez Hon. Antonio S. Romero. Entre los hechos que la Sala de instancia dio por probados en el *caso I-301* aparecen los siguientes: (1) Marcial Suárez Suárez falleció el 19 de diciembre de 1949 siendo sus herederos los demandantes en dicho caso. Por orden de 6 de febrero de 1950 de la Corte de Distrito de San Juan, el heredero y albacea testamentario Juan Suárez Fuentes pasó a ser también Administrador Judicial de los bienes relictos. (2) En 30 de noviembre de 1949 el Tesorero notificó a Marcial Suárez Suárez determinaciones tentativas de deficiencias que a petición de los interesados fueron reconsiderados. (3) Después de varias vistas administrativas y conferencias entre los representantes de ambos litigantes, éstos llegaron a acuerdos satisfactorios respecto a las contribuciones sobre ingresos adicionales a ser satisfechas para *los años envueltos* (1941 al 1946), excepto en lo concerniente al año 1943 y a los efectos, en el año 1944, de lo que fuere decidido para el año 1943 por el tribunal. (4) La dificultad en el 1943 surgió de la no aceptación por el Tesorero de la deducción de partidas en un monto de $100,164.33. De ahí en adelante la Sala de instancia procedió a considerar la controversia en cuanto a dichas deudas incobrables y resolvió que no procedía deducirlas en el referido año 1943, sosteniendo la deficiencia determinada para dicho año y dejando inalterada la de 1944. Como consecuencia concluyó que la condición de la renuncia respecto a la tasación para dicho año de 1944 carecía de uti-

lidad y eficacia. Eventualmente este fallo fue confirmado en todas sus partes en *Sucn. Suárez* v. *Secretario de Hacienda*, 82 D.P.R. 321.(¹)

## III

Al volver el caso de *injunction* a la Sala de instancia después de nuestro fallo de 10 de marzo de 1958, 80 D.P.R. 203, el Secretario de Hacienda adicionó a su moción original sobre sentencia sumaria y otros documentos una declaración bajo juramento radicada en autos en 5 de septiembre de 1958, haciendo constar: (1) Que en 30 de noviembre de 1949 se cursó a Marcial Suárez notificación de deficiencias tentativas, por *correo certificado Núm. 1671*, para los años 1941 al 1946, ambos inclusive, en la cantidad de $639,576.67. (2) Que Marcial Suárez falleció en 19 de diciembre de 1949 sobreviviéndole su viuda Encarnación Fuentes, sus hijos José y Juan Suárez Fuentes y su nieto Juan Suárez Miranda, y Juan Suárez Fuentes fue designado albacea testamentario y luego Administrador Judicial. (3) Que después de celebrada la correspondiente vista administrativa, en 22 de mayo de 1951 notificó deficiencias definitivas por el monto de $369.998.75 por *correo certificado Núm. 5766* para los años 1941 al 1946, dirigidas como sigue: "Sr. Marcial Suárez (fenecido) C/O Sr. Juan Suárez Fuentes, Río Grande, Puerto Rico". (4) Que en 11 de junio de 1951 se solicitó reconsideración de la notificación definitiva de deficiencias servida en 22 de mayo de 1951. (5) Que en virtud de evidencia adicional sometida se reajustaron las deficiencias notificadas en definitiva en 22 de mayo de 1951 y Juan Suárez, en su carácter de albacea de Marcial Suárez, aceptó dichas deficiencias así reajustadas para todos los años en controversia excepto la del año 1943, firmando renuncias a las restricciones

---

(¹) En cuanto al aspecto de las renuncias para la tasación y cobro de los años 1941, 1942, 1944, 1945 y 1946, que constituye el tuétano de la controversia en el caso de *injunction*, véase la declaración del contador de los demandantes Sr. Ángel de Ángel transcrita en nuestra opinión, 82 D.P.R., a la pág. 329.

para la tasación y cobro de la contribución para los referidos años. (6) Que al no haber hecho efectivo la Sucesión de Marcial Suárez el pago de las referidas deficiencias, en 24 de octubre de 1951 se procedió a tasar la contribución tal y como había sido aceptada por Juan Suárez Fuentes en su carácter de albacea.

Se unieron a la anterior declaración jurada los documentos de renuncia para cada año, excepto el 1943, firmados "Marcial Suárez (Fenecido) Por: (Fdo.) Juan Suárez—Juan Suárez, Albacea de Marcial Suárez." En ellos se renunciaba a las restricciones impuestas por la sección 57 de la Ley y se consentía a la tasación y al cobro de la deficiencia para cada año. Las deficiencias así reajustadas y aceptadas ascendían a $121,171.13 en comparación a $344,277.46 antes del ajuste y aceptación.

Los demandantes no radicaron escrito alguno para contradecir o impugnar los hechos expuestos en la referida declaración jurada ni en los demás documentos unidos a la solicitud de sentencia sumaria. Así las cosas, la Sala sentenciadora dictó sentencia en 28 de enero de 1959 declarando sin lugar la demanda de *injunction*. Concluyó la Sala que por la evidencia que tenía ante sí relacionada con la moción de sentencia sumaria, el Secretario de Hacienda había cumplido con lo dispuesto en la sección 57(a) de la Ley y había hecho, para los años en controversia, y por correo certificado, notificación de determinaciones tentativas y definitivas de deficiencias. Los demandantes apelaron. ▆

## IV

A la luz de los antecedentes expuestos, el fallo sumario que declaró sin lugar la demanda de *injunction* ante los planteamientos de hecho que tuvo ante sí, era de rigor para la Sala sentenciadora, posiblemente bajo la doctrina de cosa juzgada o mejor aún, bajo la de impedimento colateral por razón de sentencia—*caso I-301*—y sin lugar a duda, a tenor de los hechos producidos por el Secretario en relación con su

moción para que se dictara sentencia sumariamente, hechos estos que no fueron controvertidos por los demandantes. Cfr.: *Cortés Piñeiro* v. *Sucn. A. Cortés*, 83 D.P.R. 685 (1961); *Gómez* v. *Marques*, 81 D.P.R. 721; *Vega* v. *P. R. Railroad & Transport Co.*, 79 D.P.R. 401; *Cedeño* v. *Junta Dental*, 79 D.P.R. 549; *Municipio* v. *Tribunal Superior*, 78 D.P.R. 816; *Sánchez* v. *De Choudens*, 76 D.P.R. 1; *Despiau* v. *Pérez*, 76 D.P.R. 123; *Rivera* v. *Benítez*, 73 D.P.R. 377, 392; *Hettinger & Co.* v. *Tribunal de Distrito*, 69 D.P.R. 137.[2] ∎

En este Tribunal los demandantes hacen diversos planteamientos pero es de rigor, antes que nada, puntualizar el siguiente aspecto de esencial pertinencia al caso. Por el récord es indudable que *de hecho* hubo una notificación preliminar de deficiencias al propio causante, y se hizo otra final,—al causante en la persona de sus herederos a través del albacea, —ambas notificaciones por correo certificado. Las determinaciones finales se cursaron en 22 de mayo de 1951 excepto para el año 1943. Dentro del período reglamentario los demandantes litigaron el 1943 ante el Tribunal y, en cuanto a sus efectos, el año 1944; habiéndose dispuesto judicialmente

---

[2] La Regla 36.5 de las de Procedimiento Civil de 1958, en vigor cuando el Secretario de Hacienda unió su declaración jurada y otros documentos a la moción de sentencia sumaria y a la fecha en que se falló el caso, dispone que "[C]uando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en esta Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o repulsas contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo aquellos hechos materiales que cree que intenta probar. Si no contestare bajo juramento, deberá dictarse sentencia en su contra."

La anterior Regla 56 de las de Enjuiciamiento de 1943 sobre sentencia sumaria no contenía esta disposición, ni tampoco aparece en la Regla 56 federal. Por supuesto, a la luz de nuestra jurisprudencia a la fecha en que se adoptó dicha disposición y de la doctrina normativa que rige la concesión de sentencias sumariamente, la última oración ha de interpretarse en el sentido de que en ausencia de una genuina controversia de hecho planteada por la parte contraria, se dictará sentencia en su contra siempre que el derecho asista y le sea favorable a la parte a favor de quien se dicta. Véase Regla 36.3.

504

de la contribución para estos años por fallo de 13 de febrero de 1953, 7 meses antes de la radicación de este pleito de *injunction*.

La sección 57(a) de la Ley de Contribuciones sobre Ingresos de 1924, según aquí aplicable enmendada por la Ley 230 de 1949 efectiva el 1ro. de julio de ese año, disponía que el Secretario notificaría la deficiencia y el contribuyente podía solicitar reconsideración y vista administrativa dentro del término de 30 días. De no solicitarla, o si en reconsideración se confirmaba la deficiencia notificada en todo o en parte, el Secretario *debía* notificar una determinación final y el contribuyente podía apelar entonces al foro judicial. La forma de esta apelación se regía por el inciso (1), apartado A del art. 2 de la Ley 235 de 10 de mayo de 1949(*) estableciendo un procedimiento uniforme ante el Tribunal de Contribuciones [Superior], en que el contribuyente debía radicar su demanda contra la determinación final dentro de un término jurisdiccional de 30 días de notificada ésta, y debía cumplir con otros requisitos. La sección 57(b) enmendada por la propia Ley 230 disponía que si el contribuyente no apelaba para ante el Tribunal, el Secretario *procedería a tasar* la deficiencia con intereses desde la fecha prescrita para el pago del primer plazo de la contribución.

Ligadas con el procedimiento anterior están las disposiciones de la sección 60(a)(1) y 60(b) según regían enmendadas por la Ley 230, al efecto de que la contribución *se tasaría* dentro de siete años a partir de la radicación de la planilla, y prorrogándose dicho término de siete años 30 días adicionales si antes se hubiera notificado según la sección 57(a) una deficiencia y el contribuyente no hubiera acudido al Tribunal; y de haber acudido, prorrogado dicho término de siete años 90 días después de ser firme la decisión judicial. Una vez así tasada e impuesta la contribución, la misma debe

(*) Este inciso quedó derogado por la Ley 9 aprobada y efectiva en 8 de octubre de 1954.

ser pagada al requerimiento del Secretario y puede ser cobrada ya por el procedimiento sumario de apremio o ya mediante procedimiento en corte. (Sección 61(c).) Por la sección 83 de la Ley de 1924 dichas contribuciones así tasadas e impuestas se declaran un crédito preferente a favor del Estado Libre Asociado sobre los bienes del contribuyente a partir de determinado momento, y son cobrables mediante el mismo procedimiento de apremio dispuesto para el cobro de la contribución sobre la propiedad, con miras también a las disposiciones de la Ley 14 de 24 de agosto de 1933 según ha sido enmendada. ▮

Podrá observarse que lo expuesto constituye un procedimiento integrado que conduce de una etapa a otra con sujeción a términos de tiempo pre-establecidos. Después de notificada una determinación *final* la ley no considera acción posterior alguna administrativa en torno a dicha determinación que surta efectos legales en el procedimiento. Notificada como fue la determinación *final* del Secretario en 22 de mayo de 1951, los demandantes no tenían en ley derecho a notificación posterior de determinación alguna de deficiencia para algún propósito o fin dentro del procedimiento establecido. Al no acudir al entonces Tribunal de Contribuciones dentro del término de 30 días desde la notificación de mayo 22 de 1951, por mandato de la sección 57(b) el Secretario venía obligado a *tasar* e imponer las contribuciones aquí envueltas a partir del 21 de junio, independientemente de los documentos de renuncias de restricciones para tasar suscritos a nombre del contribuyente fallecido por el albacea testamentario Juan Suárez Fuentes, ya fueran válidos y autorizados por ley dichos documentos o no; tuviera o no el albacea—como discuten ante nos los demandantes que no tenía—facultad en derecho para obligar a los demás miembros de la Sucesión del contribuyente.([3])

_____

([3]) Nuestra Ley de Contribuciones sobre Ingresos de 1924 no dispuso de manera expresa nada relacionado con estos trámites oficiales de renun-

Independientemente de algún aspecto de prescripción que no se sustancia con prueba en el récord ni se litiga en este caso, la facultad que tuvo el Secretario para tasar e imponer estas contribuciones en 24 de octubre de 1951 y para, una vez tasadas e impuestas, proceder a su cobro mediante los procedimientos que esta demanda de *injunction* impugna le surgía de la Ley y no de los documentos aludidos. Los trámites posteriores de los demandantes al nivel administrativo a partir del 11 de junio de 1951 no paralizaban el término de 30 días para acudir al Tribunal. Al optar por esas gestiones ellos asumieron su propio riesgo de perder el foro judicial o su día en corte antes de que le tasaran, aunque por otra parte y debido a dichas gestiones, la contribución de $344,277.46 (*) que habrían de litigar con la obligación de afianzarla quedó reducida a $121,171.13, cantidad que se aceptó pagar. ■

Los demandantes alegan ante nos que el Secretario venía obligado a notificarles una determinación final después de es-

cias a las restricciones de la sección 57 y consentimiento a la tasación de una deficiencia. Tampoco se prohibieron expresamente. La Ley de Rentas de 1924 federal de donde se calcó la nuestra no disponía nada en ese sentido. Esta no es la misma situación ni ha de confundirse con lo dispuesto en la sección 61(b) autorizando al Secretario y al contribuyente a acordar por escrito que la contribución se imponga después del período [7 años] fijado en la sección 60(a). La Ley de Rentas de 1926 federal adicionó una disposición a la Ley de 1924, Sec. 273(d), 44 Stat. pág. 56, en el sentido de que el contribuyente tendría el derecho en cualquier tiempo, mediante aviso por escrito al Comisionado, a renunciar las restricciones impuestas en el párrafo (a) de dicha Sección 273 [sección 57] para la tasación y cobro de toda o parte de la deficiencia. Esta disposición, que aquí no adoptamos, se intercaló por el Congreso con miras a favorecer al contribuyente de modo que éste pudiera pagar la contribución evitando que se acumularan más intereses, sin que por otra parte perdiera su derecho a litigar la misma ante la Junta de Apelaciones Contributivas.

Sea como fuere, lo hecho en este caso no envolvía otra cosa que la renuncia del contribuyente a un derecho que tenía bajo la sección 57(a) a que no le tasaran antes de acudir al foro judicial o antes de que expirara el término para hacerlo. De acuerdo con el art. 4 del Código Civil los derechos concedidos por las leyes son renunciables a no ser la renuncia contra la ley, el interés o el orden públicos o en perjuicio de tercero. La renuncia de ese derecho en este caso no era contrario a lo estatuido.

(*) $369,998.75 monto de la determinación final menos $25,721.29 deficiencia del 1943 litigada por separado.

tos trámites, e invocan lo resuelto en *González Padín Co.* v. *Tribunal*, 66 D.P.R. 24. No tienen razón. Primero, si se aceptó la cantidad reducida—independientemente de que la aceptación por el albacea o Administrador Judicial obligara o no a los otros herederos—no habría propósito alguno en notificar una determinación para fines de la sección 57. Segundo, nada hay en la prueba que indique que el Secretario dejara sin efecto la determinación final de mayo 22 para volver a una etapa administrativa del caso—ello asumiendo que tuviera facultad en ley para hacerlo. Y no habiendo quedado sin efecto dicha notificación final, no hubiera estado autorizado el Secretario a hacer una ulterior determinación que alterara los términos de la sección 57 y de la Ley 235 de 1949. *Padín* v. *Tribunal* interpretó y aplicó una sección 57(a) que disponía en un aspecto aquí sustancial de manera distinta a como disponía según fue aplicable a este caso, ante una situación de hechos también distinta a la presente. Esa decisión no ofrece oposición a los criterios antes expresados. ▪

Con lo expuesto se podría disponer ya del asunto, pero en este Tribunal arguyen los demandantes que el problema principal que plantea el caso es si el procedimiento de notificación de deficiencias puede utilizarse cuando el contribuyente ha fallecido. Sostienen que dicho procedimiento que llaman "sumario" no procede y que el Secretario venía obligado a instituir un pleito ordinario contra los herederos en cobro de estas contribuciones. Para ello invocan la Sección 60 de la Ley. Tampoco tienen razón.

La sección 60(a)(1) según aquí aplicable ordena que la contribución se tase dentro de siete años de haberse radicado la declaración y prohibe que se entable un procedimiento judicial para el cobro de dicha contribución después de vencido ese período. El inciso (2) estatuye que tratándose de los ingresos recibidos durante la vida de un finado, la contribución *será tasada*, y cualquier procedimiento judicial para su

cobro *deberá empezarse* dentro de un año a partir del requerimiento por escrito hecho al efecto por el albacea, administrador u otro representante fiduciario de los bienes relictos de dicho finado, requerimiento que debe hacerse después de rendida la planilla. Dicha tasación no podrá efectuarse después del vencimiento del período de siete años prescrito en el inciso (1), ni después del de un año de este inciso (2). El efecto de la anterior disposición es obligar al Secretario a tasar la contribución o a iniciar un pleito para su cobro dentro de un año desde que el albacea u otro representante le requiere que tase (siempre que se haya rendido la planilla) aún cuando le reste tiempo adicional del período de siete años. Así se explica claramente en los artículos 336 y 337 del Reglamento de la Ley aprobado en 27 de mayo de 1926.

Por otra parte la sección 61(c) ha dispuesto que cuando se impusiere la contribución dentro del término prescrito en la sección 60 y en esta sección, (61(b)), la contribución podrá ser cobrada mediante embargo o procedimiento judicial entablado dentro de 10 años de impuesta, pero nada en la Ley impedirá que empiece *sin tasación* el procedimiento judicial para el cobro de la contribución en cualquier momento antes del vencimiento del período dentro del cual la tasación pudiera ser hecha. ([4])

Nada hay en la sección 60 ni en la 61, ni en el Reglamento que sostenga la posición de los demandantes de que por haber fallecido el contribuyente después de la notificación preliminar y antes de la determinación final, los procedimientos bajo la sección 57 que eventualmente conducen a la tasación y co-

---

([4]) Esta disposición, que en lo pertinente ha quedado igual desde su origen en la Ley de 1924, debe considerarse a la luz de otras disposiciones originales que luego han sufrido sustanciales cambios. Bajo la sección 57(b) y hasta diciembre 31 de 1940, el Tesorero venía obligado a iniciar un pleito ordinario dentro del término de un año *sin tasación* si deseaba cobrar una deficiencia o parte no sostenida por la Junta de Revisión e Igualamiento. En cuanto a la deficiencia sostenida el contribuyente debía pagarla bajo protesta e iniciar un pleito de devolución de contribuciones. Véanse también la sección 62(c) original y la sección 76. A tenor de los

bro de la contribución dejaban de ser aplicables y terminaban automáticamente con el fallecimiento, debiendo el Secretario interponer un pleito ordinario contra los demandantes. Su principal argumento según lo exponen en el alegato es que la sección 57 se refiere una y otra vez al *"contribuyente"*, y que un contribuyente fallecido no puede hacer las cosas que exige dicha sección ni darse por notificado. Físicamente no, pero es posible que jurídicamente pueda hacer tales cosas bajo nuestro derecho. Ahí el término "contribuyente" no es un nombre propio y según lo define la Ley, sección 2 (9), significa cualquier persona sujeta a contribución impuesta por esa Ley. Los demandantes no niegan su obligación sustantiva de pagar estas contribuciones del causante; atacan en este pleito el procedimiento para su cobro. (5)

La Ley de 1924 no contiene disposiciones relativas al procedimiento que deba seguirse en una situación como la anterior. Pero el Art. 12 del Código Civil dispone que en las materias que se rijan por leyes especiales, las deficiencias de éstas se suplirán por las disposiciones de dicho Código. Cfr.:

---

cambios hechos posteriormente, en materia de deficiencias los pleitos ordinarios sin tasación bajo la Ley de 1924 directamente instituidos prácticamente se reducen a la situación de la sección 61 (a)—declaración falsa o fraudulenta o ausencia de declaración—ya que para una determinación judicial tanto para el contribuyente como para el Secretario, el procedimiento posterior se encauzó a través de la sección 57 y otras leyes relacionadas con el afianzamiento de la contribución en el ínterin, y su pago por el contribuyente que quería revisar en el Tribunal Supremo la contribución determinada por el Tribunal de primera instancia.

(5) El Secretario observa con bastante razón que esta posición de los demandantes ante nos es contradictoria e incompatible con su propia demanda en la que alegan que la tasación es nula precisamente por no haberse hecho la notificación de la sección 57(a) y piden que se ordene al Secretario notificar las determinaciones de acuerdo con dicha sección para ellos estar en condiciones de litigar la contribución. Por otra parte el contribuyente falleció sólo a los 19 días de notificada la determinación preliminar en noviembre 30 de 1949 y hasta la notificación final en mayo 22 de 1951 la Sucesión estuvo tramitando el asunto administrativamente y aún después, sin que levantara en ese entonces objeción alguna al procedimiento.

*Wood* v. *Tribunal de Contribuciones*, 71 D.P.R. 233, pág. 235; *Sierra* v. *Tribunal Superior*, 75 D.P.R. 841, pág. 846; *Galiñanes Hnos.* v. *Tribunal Superior*, 77 D.P.R. 881, pág. 888. En el de *Sierra* dijimos más: que se suplen por las leyes generales que sean aplicables. Según el art. 610 del Código Civil (ed. 1930) los herederos suceden al difunto por el solo hecho de su muerte en todos sus derechos y *obligaciones*. Cfr.: *Morales* v. *Cabrera*, 53 D.P.R. 94, pág. 100; *Sosa* v. *Sucn. Morales*, 58 D.P.R. 360, pág. 363; *Silva* v. *Doe*, 75 D.P.R. 209, pág. 215; *Dávila* v. *Registrador*, 15 D.P.R. 669. Muerto Marcial Suárez sus herederos aquí demandantes pasaron a ser *ipso iure* "el contribuyente" de la sección 57 a todos los efectos y trámites de dicha sección, y eventualmente a todos los efectos de los procedimientos de tasación y cobro de las deficiencias de los cuales la sección 57 es precursora. ■

En cuanto a que Juan Suárez Fuentes no representaba a los demás herederos en dichos trámites administrativos, aparte de las manifestaciones de los propios demandantes en el *caso I-301* y las conclusiones del Tribunal en dicho caso, basta recordar que además de albacea Juan Suárez era Administrador Judicial, según el récord. Véanse por analogía los Arts. 43, 53 (Regla 17(c) de 1943) y el 584 del Código de Enjuiciamiento Civil (ed. 1933). Este último dispone que será deber de los administradores y mientras éstos se nombren, de los albaceas, representar al finado en *todos los procedimientos* comenzados por o contra el mismo antes de su muerte, y los que se promovieran después por o contra el caudal de la herencia. Cfr.: *Franceschi* v. *Corte*, 45 D.P.R. 666, pág. 675; *Calderón* v. *Herederos de Boerman*, 37 D.P.R. 800, pág. 803. Este artículo pertenece a un cuerpo de ley para el trámite en los tribunales, pero debe tenerse en cuenta que los procedimientos administrativos de la sección 57 notificados en este caso al albacea o administrador judicial, tratándose de deficiencias eran *a fortiori* un requisito previo a la acción judicial, sin los cuales la jurisdicción de los tribunales no podía ser invocada por los demandantes. Cfr.: *Pueblo*

v. *Dones*, 56 D.P.R. 211, a la pág. 217, en que aceptamos una definición del término "procedimiento" que incluye una acción administrativa, y véase la definición del término en el *Diccionario de Derecho Usual* de Cabanellas. Más, la propia Ley de 1924 en su sección 82(b) autoriza el que se nombre un administrador judicial a instancias de El Pueblo en relación con dicha ley, y eso debe tener algún propósito.([6]) ▮

Los demandantes discuten en alguna extensión otros planteamientos que no son propios para ser considerados en este pleito de *injunction* y que podrían tal vez ser discutidos en una acción sobre reintegro de estas contribuciones que pudiera interponerse en el futuro. Una política pública bien arraigada ha impedido por acción legislativa la paralización del cobro de las contribuciones mediante el interdicto judicial. En estos casos el Legislador prohibió la tasación de una deficiencia o el comienzo de un procedimiento de apremio o procedimiento en corte para su cobro de no haberse enviado al contribuyente una determinación final, o antes de expirar el término para acudir a la acción judicial o hasta que la sentencia fuera firme. Autorizó el que tales actos sean impedidos o anulados mediante procedimiento judicial—sección 57(a)(10) según fue enmendada por la Ley 9 de 8 de octubre de 1954 —siendo una excepción a la política pública general, el alcance de este procedimiento judicial debe ser rigurosamente limitado a las situaciones de hecho expresamente estatuidas.

Por todo lo anteriormente dicho, salvo lo que pasaremos a exponer, habría de confirmarse la sentencia apelada.

---

([6]) El art. 584 (51 de la Ley de Procedimientos Legales Especiales) tiene su equivalencia en el 1008 de la Ley de Enjuiciamiento Civil española de 1881 disponiendo que el administrador de los bienes representará al *ab-intestato* en todos los pleitos que se promuevan o que estuvieren principiados al prevenirse este juicio... y que también ejercitará en dicha representación las acciones que pudieran corresponder al difunto aunque deban deducirse... o en la vía administrativa.

## V

Contra la sentencia dictada en este caso en 28 de enero de 1959 los demandantes interpusieron un escrito de apelación exponiendo:

"Sírvanse quedar notificados de que la parte demandante no conforme con la opinión y sentencia dictada el 28 de enero de 1959, notificada el 3 de abril de 1959 y en esa fecha archivada en autos, apela de la misma para ante el Tribunal Supremo de Puerto Rico.

La apelación de este caso conlleva un planteamiento constitucional cual es la validez o facultad para proceder por la vía de apremio al cobro de contribuciones, sin que éstas hayan sido debidamente notificadas y sin oportunidad de un día en corte en violación del debido proceso de ley garantizado por la Constitución del Estado Libre Asociado de Puerto Rico y la Constitución de los Estados Unidos de América." ■

A tenor de las constancias en el récord resulta claro que la Sala sentenciadora falló meramente una cuestión de hecho: si el Secretario notificó o no en este caso una determinación final de deficiencias antes de tasar la contribución y proceder a su cobro, fallo que está sostenido por prueba que los demandantes no controvirtieron. La sección 14 de la Ley de la Judicatura de 1952 según fue enmendada por la Ley 115 de 26 de junio de 1958 dispone que serán apelables al Tribunal Supremo las sentencias finales que dicte el Tribunal Superior en casos civiles en las cuales se *plantea* o *resuelve* una cuestión constitucional *sustancial* al amparo de la Constitución de los Estados Unidos o la de Puerto Rico. Véase Regla 53.2 de 1958. Después de analizado este caso no se puede concluir que se planteó y se resolvió una cuestión constitucional *sustancial*, ni una cuestión constitucional. Está envuelto el alegado incumplimiento de un requisito *estatutario* que podía dar lugar a un *injunction* contra el Secretario, aparte de que bajo nuestras leyes un contribuyente en la posición de los demandantes tiene el debido proceso de ley bien mediante *injunction* como el aquí interpuesto, o ya en un

pleito para el reintegro de una contribución cobrada ilegalmente. El escrito de apelación no llenaría tampoco los requisitos necesarios para considerarlo como una solicitud de revisión. Este caso y el número 12,685 que estamos resolviendo en esta fecha *per curiam* y tal vez otros parecidos indican la necesidad y la conveniencia de que las partes en apelaciones civiles posteriores a la vigencia de la Ley 115 de 1955 vengan obligadas a sustanciar adecuadamente lo relativo a la jurisdicción de este Tribunal a la luz del récord en apelación.

*Se desestimará, por falta de una cuestión constitucional, la apelación de este caso.*