ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CARMEN IRIS RIVERA GALARZA Y OTROS<br><br>Apelados<br><br>v.<br><br>HÉCTOR IVÁN RIVERA FIGUEROA Y OTROS<br><br>Apelantes | KLAN202400560 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm. HU2022CV01184<br><br>Sobre: Desahucio por falta de pago y otros |
|---|---|---|

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2024.

I.

En 24 de agosto de 2022, la señora Carmen Iris Rivera Galarza instó *Demanda de Desahucio, Incumplimiento de Contrato y Cobro de Dinero* contra el Sr. Héctor Iván Rivera Figueroa. El 4 de noviembre de 2022 el señor Rivera Figueroa contestó la *Demanda* y presentó *Reconvención.* Convertido el caso en un pleito ordinario, el 15 de noviembre de 2022, la señora Rivera Galarza radicó *Contestación a Reconvención.*

El 12 de julio de 2023, la señora Rivera Galarza radicó *Demanda Enmendada,* a los fines de traer al pleito a la Sociedad Legal de Gananciales compuesta por el señor Rivera Figueroa y su esposa (Rivera Figueroa y otros). Debidamente emplazada, Rivera Figueroa y otros, contestó la *Demanda* y enmendó la *Reconvención.* Alegó que los herederos estaban obligados a venderle el inmueble y que se condenara a la señora Rivera Galarza a satisfacer la suma de $50,000.00, por concepto de honorarios de abogado, entre otras sumas.

Número Identificador

SEN2024_____

Tras la presentación de múltiples mociones de las partes,[1] el 3 de octubre de 2023, el Tribunal de Primera Instancia señaló la Conferencia con Antelación a Juicio para el 30 de enero de 2024. El 19 de octubre de 2023, la señora Rivera Galarza radicó *Solicitud de Sentencia Sumaria*. El 7 de diciembre de 2023, Rivera Figueroa y otros, presentaron su *Oposición a Sentencia Sumaria*. El 25 de enero de 2024, las partes presentaron el *Informe de Conferencia con Antelación a Juicio*. Finalmente, el 5 de abril de 2024, notificada el 17, el Tribunal de Instancia dictó *Sentencia* sumariamente declarando Con Lugar la *Demanda* de desahucio y condenando a Rivera Figueroa y otros, al pago de cánones de arrendamiento vencidos ascendente a $7,200. Además, de los cánones que sigan acumulándose a razón de $200.00 mensuales, hasta la entrega de la posesión y la imposición de $7,000 por honorarios de abogados. Consecuentemente, desestimó la *Reconvención* por falta de partes indispensables y concluyó que la *Demanda* instada no adolecía de falta de partes indispensables.

El 7 de mayo de 2024, el Tribunal de Primera Instancia declaró No Ha Lugar la *Moción de Reconsideración* presentada por Rivera Figueroa y otros. Insatisfecho, el 6 de junio de 2024, Rivera Figueroa y otros, recurrió ante nos mediante *Apelación*. Señala:

1. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR CON LUGAR LA MOCI[Ó]N DE SENTENCIA SUMARIA.

---

[1] Ante la defensa levantada por Rivera Figueroa y otros, de falta de parte indispensable en la *Demanda* y la levantada por la señora Rivera Galarza de falta de parte indispensable en la *Reconvención*, el 21 de julio de 2023, la señora Rivera Galarza radicó *Posición de la Parte Demandante en Oposición a Defensa Afirmativa Levantada por la Parte Demandada de Falta de Parte Indispensable en Cuanto a la Demanda y Solicitud de Desestimación de la Reconvención Instada por la Parte Demandada por Falta de Parte Indispensable*. El 18 de agosto de 2023, Rivera Figueroa y otros radicó *Contestación a la Demanda Enmendada; Reconvención Enmendada*. El 18 de agosto de 2023, Rivera Figueroa y otros, radicó moción *Réplica a Moción en Oposición a Defensa Afirmativa Levantada por la parte demandada y Falta de Partes Indispensables en Cuanto a la Demanda y Solicitud de Desestimación de la Reconvención Instada por la Parte Demandada por Falta De Parte Indispensable*.

El 21 de agosto de 2023, la señora Rivera Galarza radicó *Dúplica a Réplica A Moción en Oposición a Defensa Afirmativa Levantada por la Parte Demandada y Falta de Partes Indispensables en Cuanto a la Demanda y Solicitud de Desestimación de la Reconvención Instada por la Parte Demandada por Falta De Parte Indispensable, radicada por la parte demandada*. El 23 de agosto de 2023, Rivera Figueroa y otros radicó *Oposición a Dúplica a Replica A Moción en Oposición a Defensa Afirmativa Levantada por la Parte Demandada y Falta de Partes Indispensables en Cuanto a la Demanda y Solicitud de Desestimación de la Reconvención Instada por la Parte Demandada por Falta de Parte Indispensable*.

2. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL CONDENAR AL PAGO DE $7,200 EN CONCEPTO DE RENTA.

3. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL ESTABLECER QUE RADICAR UNA DEMANDA DE DESAHUCIO ES UN ACTO DE ADMINISTRACI[Ó]N QUE NO REQUIERE LA APROBACI[Ó]N DE LA TOTALIDAD DE LOS MIEMBROS DE LA COMUNIDAD DE BIENES.

4. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE SE EFECTU[Ó] CONFORME A DERECHO SEGÚN LO ESTABLECIDO POR EL ARTÍCULO 841 DEL CÓDIGO CIVIL, LA REUNIÓN ENTRE LOS MIEMBROS DE LA PRESENTE COMUNIDAD DE BIENES PARA LA RADICACIÓN DE LA PRESENTE DEMANDA.

5. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA Y COMETI[Ó] ERROR MANIFIESTO EN DERECHO Y SE DESVI[Ó] DE CLAROS PRECEPTOS DE DERECHO EN LA SENTENCIA EMITIDA EN EL PRESENTE CASO.

6. ERR[Ó] EL TRIBUNAL DE PRIMERA INSTANCIA AL IMPONER LA CANTIDAD DE $7,000 EN CONCEPTO DE HONORARIOS DE ABOGADOS EN EL PRESENTE CASO.

El 2 de julio de 2024 acudió la señora Rivera Galarza y otros, mediante *Alegato de la Parte Demandante-Apelada*. Con el beneficio de la comparecencia de las partes, el Derecho y jurisprudencia pertinente, procedemos a resolver.

II.

En su sustrato, mediante sus señalamientos de error 1, 3, 4 y 5, Rivera Figueroa y otros, cuestionan la procedencia de la acción de desahucio bajo el fundamento de que dicha acción no es de mera administración y, por tanto, requiere la aprobación de la totalidad de los miembros de la comunidad de bienes. Además, arguyen, que la reunión entre los miembros de la comunidad de bienes para la radicación de la *Demanda* no se efectuó conforme a Derecho, según lo establecido por el Art. 841 del Código Civil de Puerto Rico de 2020.[2] Evaluemos la corrección de sus planteamientos.

A.

Mediante la acción de desahucio el dueño de un inmueble busca "recuperar la posesión de hecho de una propiedad, mediante el lanzamiento

---

[2] 31 LPRA § 8203.

o expulsión del arrendatario o precarista que la detenta sin pagar canon o merced alguna".[3] Reglamentado por los Arts. 620-634 del Código de Enjuiciamiento Civil,[4] este procedimiento responde al interés del Estado en atender rápidamente la reclamación del dueño de un inmueble que ve interrumpido su derecho a poseer y disfrutar de su propiedad.[5] Los procesos de desahucio se centran únicamente en recobrar la posesión del inmueble, mediante el lanzamiento o expulsión del arrendatario o precarista que la detente.[6]

Según el Art. 621 del Código de Enjuiciamiento Civil, "[p]rocederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna".[7] Corresponde, primero, a la parte demandante demostrar que ostenta justo título sobre la propiedad. "En ausencia absoluta de título por parte del demandante en desahucio, su pleito no puede prosperar. A él incumbe probar sus alegaciones, no pudiendo en ningún caso descansar en la debilidad o falta de título del demandado para sostener su acción".[8]

Ahora bien, si en un procedimiento de desahucio el demandado presenta prueba suficiente para demostrar que tiene derecho a ocupar el inmueble y posee algún título igual o mejor que el demandante sobre éste, surge un conflicto de título que hace improcedente la acción de desahucio.[9] Así, "los conflictos de título no pueden dilucidarse en el juicio de desahucio por ser éste, uno de carácter sumario en que únicamente se trata de recobrar

---

[3] *Cooperativa de Vivienda Rolling Hills* v. *Colón Lebrón*, 203 DPR 812 (2020).

[4] 32 LPRA §§ 2821-2838.

[5] *Autoridad de Tierras* v. *Volmar Figueroa*, 196 DPR 5 (2016); Véase, además, *Turabo Ltd. Partnership* v. *Velardo Ortiz*, 130 DPR 226, 234-235 (1992); *Mora Dev. Corp.* v. *Sandín*, 118 DPR 733, 749 (1987); *Fernández & Hno.* v. *Pérez*, 79 DPR 244 (1956).

[6] *ATPR* v. *SLG Volmar Mathieu*, 195 DPR 5, 9-10 (2016); *C.R.U.V.* v. *Román*, 100 DPR 318 (1971); *Fernández & Hno.* v. 79 DPR en las págs. 247-248.

[7] 32 LPRA § 2822.

[8] *De León* v. *Pérez*, 54 DPR 215 (1939).

[9] *C.R.U.V.* v. *Román*, 100 DPR 318, 322 (1971); Véase, además, *Escudero* v. *Mulero*, 63 DPR 574 (1944).

la posesión de un inmueble por quien tiene derecho a ella".[10] Ante tales circunstancias, la controversia debe ser dilucidada en juicio plenario.[11] Así tramitada, la reclamación estará sujeta a las reglas de la litigación civil ordinaria, excluyendo la reglamentación de desahucio y sus restringidas condiciones.[12]

Este conflicto puede surgir entre partes que disputan el título de cierto terreno o en situaciones en las que el demandado ocupa una estructura de vivienda que presuntamente le pertenece y radica en el terreno de la parte demandante.[13] Esta última circunstancia se produce, primero, cuando se ha creado algún derecho o título a favor del ocupante de la estructura que amerita se le considere constructor o poseedor de buena fe o, segundo, cuando el demandado se limita a alegar algún título sobre la estructura de vivienda objeto del desahucio sin que posea derecho o título alguno que justifique su ocupación del terreno ajeno.[14]

En el primero de los casos, debe existir algún tipo de autorización del dueño del terreno que le confiera al demandado o a sus antecesores el derecho aparente a ocupar la vivienda y que por lo tanto de lugar a la presunción de buena fe.[15] El propietario del terreno tendría derecho a hacer suya la estructura, previo el pago al dueño de ésta del costo de los materiales y de la mano de obra o del costo de reproducción al momento en que ejercitare su derecho, o a obligar a los que construyeron a pagar el precio del terreno.[16] Este derecho, concedido al dueño del terreno, podrá ejercerlo mediante una acción accesoria contra el poseedor de buena fe.[17]

---

[10] *C.R.U.V.* v. 100 DPR en la pág. 321; *Negrón* v. *Corujo*, 67 DPR 398 (1947); *Escudero* v. *63* DPR en la la pág. 588.
[11] *Id.*; *González* v. *Colón*, 49 DPR 557 (1936); *Laureano* v. *Díaz*, 48 DPR 705 (1935); *Brunet* v. *Corte*, 45 DPR 901 (1933).
[12]*ATPR* v. 195 DPR en la pág. 10; *González* v. Colón, 49 DPR 557 (1936); *Laureano* v. *Díaz*, 48 DPR 705 (1935); *Brunet* v. *Corte*, 45 DPR 901 (1933).
[13] *C.R.U.V.* v. 100 DPR en la pág. 322.
[14] *Id.*
[15] *Id.* pág. 324.
[16] *Id.* págs. 322-323; Véase, además, CÓD. CIV. PR arts. 293, 297, 31 LPRA §§ 1146, 11071 (1930) (derogado 2020).
[17] *Id.* págs. 322-323; Véase, también, CÓD. CIV. PR art. 287, 31 LPRA § 1131 (1930) (derogado 2020).

En el segundo caso, es decir, cuando el demandado solo alega ser titular sobre la estructura de vivienda objeto del desahucio sin tener derecho o título alguno que justifique su ocupación del terreno ajeno, surge, por ejemplo, cuando el demandado ha construido de mala fe, es decir, sin la autorización del dueño del terreno y a sabiendas de que el terreno no le pertenece, o cuando el demandado no logra probar contrato ni permiso alguno para permanecer en el terreno.[18] En estos casos procede el desahucio, por no existir conflicto de título alguno entre el demandante y el demandado.

En lo pertinente a este caso, ante la realidad de que ninguna comunidad hereditaria[19] goza de personalidad jurídica,[20] el Art. 1601 del Código Civil de 2020, dispone que, su estado se rige por las disposiciones relacionadas con la administración de la herencia y con las de la comunidad de bienes.[21] Al respecto, el Art. 835 del Código Civil de 2020 establece que, "[e]xiste comunidad de bienes cuando una cosa o un derecho pertenecen en común proindiviso a dos o más personas".[22] En cuanto a la administración de la cosa común, el Art. 841 del mismo Código,[23] dispone que:

> Todos los comuneros tienen derecho a participar en la administración de la cosa común.
> En los actos de administración ordinaria son obligatorios, aun para la minoría disidente, los acuerdos adoptados por la mayoría absoluta de los comuneros calculada según el valor de sus respectivas cuotas.
> Para que los acuerdos adoptados por la mayoría sean válidos, es necesario informar previamente a todos los comuneros el objeto de las deliberaciones a las que se les convoca.
> Si no se aprueban las medidas necesarias para la administración de la cosa común o no se forma mayoría, o si no se ejecuta el acuerdo adoptado, cualquier comunero puede recurrir a la autoridad judicial competente.

De lo anterior se infiere, que, si bien todos los herederos tienen derecho a participar de la administración de la cosa indivisa, los actos de administración los adopta una mayoría de ellos, calculada a base de su cuota.

---

[18] *Id.*
[19] "Existe una comunidad hereditaria cuando concurre a la sucesión una pluralidad de personas con derechos en la herencia expresados en cuotas abstractas". CÓD. CIV. PR art. 1599, 31 LPRA § 11071 (2020).
[20] *Id.*
[21] 31 LPRA § 11073.
[22] *Id.* § 8191.
[23] *Id.* § 8203.

Más importante aún, de haber disidentes con respecto a la acción de administración adoptada por la mayoría, esta será obligatoria para los que no estuvieron de acuerdo. Claro está, la validez de los acuerdos adoptados por la mayoría y por ende su ejecutabilidad compulsoria depende de que se informe previamente a todos los comuneros los aspectos de administración que se discutirán en la reunión convocada a esos fines. Este articulado permite a cualquier comunero recurrir al tribunal en caso de que no se aprueben las medidas necesarias para la administración de la cosa común, no se logre mayoría a esos efectos o, de adoptarse la medida, esta no se lleve a cabo de la forma acordada.

B.

En este caso, la acción de desahucio la provoca un contrato de arrendamiento suscrito entre la señora Rivera Galarza y el señor Rodríguez Figueroa. La primera, compareciendo sola a la firma del contrato, cedió en arrendamiento al señor Rivera Figueroa un bien inmueble perteneciente a una comunidad hereditaria de la que ella es coheredera y albacea.[24] Al acto comparecieron firmando en calidad de testigos los coherederos Wilfredo y Héctor.

En el inciso 8 del susodicho contrato las partes estipularon que "[t]odos los hermanos deben estar de acuerdo con este contrato y deberán autorizar a la hermana mayor Carmen l. Rivera Galarza, establecida en Puerto Rico". En el párrafo SEXTO se estableció canon de $200.00 mensuales y el señor Rivera Figueroa se comprometió a reparar el plafón de la cocina, un baño, la pintura para el exterior e interior de la residencia y a presentar los recibos originales con copia para su descuento en caso de que decidiera comprar la propiedad alquilada.

Desde mayo de 2021, el señor Rivera Figueroa incumplió con el pago y no proveyó evidencia de haber efectuado pago alguno, lo que ha incrementado

---

[24] Tras su fallecimiento, los causantes Belén Rivera Torres y su cónyuge, Luz María Galarza Rivera, instituyeron como herederos a sus doce (12) hijos: Gloria María, Carmen Iris, José Ubaldo, Wilfredo, Carmen Socorro, Héctor Luis, Luis René, Roberto, Jorge Luis, Luz Nereida, Raúl y Walter, todos de apellidos Rivera Galarza. Designaron como albacea testamentaria a su hija y coheredera, la señora Rivera Galarza.

su deuda a razón de $200.00 mensualmente, mientras retenga la posesión de la propiedad. Así las cosas, una vez culminó el término del contrato según estipulado, la señora Rivera Galarza le requirió mediante carta al señor Rivera Figueroa la entrega de la propiedad y el pago de los cánones adeudados. Ante la negativa del señor Rivera Figueroa de entregar la posesión del inmueble y debido a la falta de pago, la señora Rivera Figueroa convocó, como albacea, a una reunión de herederos, a la cual comparecieron personal o virtualmente, ocho (8) de los doce (12) herederos, así como el señor Rivera Figueroa y su esposa. A raíz de dicha reunión, todos los herederos co-demandantes le confirieron a la albacea, la señora Rivera Figueroa, un poder expreso para radicar el pleito. Expresaron lo siguiente:

> Para suscribir contratos de arrendamiento, terminar contratos de arrendamiento, cobrar rentas, lanzar inquilinos/desahuciar a ocupantes de la propiedad donde tengan derechos los poderdantes, específicamente y en adición a cualquiera otra propiedad y/o derechos puede ejercer todos los poderes que se confieren en este poder sobre la propiedad que ubica en el Barrio Calabazas, Sector Pandura, Carretera tres (3), en Yabucoa, Puerto Rico; a la cual se refiere el contrato de arrendamiento suscrito en el dos mil diecinueve (2019), entre Carmen Iris Rivera Galarza y Héctor Iván Rivera Figueroa, para lo cual puede actuar como nuestra apoderada en procedimientos judiciales y/o administrativos; una vez desahuciados los ocupantes de la estructura que pertenece a la Sucesión de Belén Rivera Torres y Luz María Galarza Rivera, puede establecer las normas de uso y disfrute para todos los miembros de la sucesión sea de la propiedad y/o del producto de las rentas.[25]

El poder que todos refrendaron evidencia la legitimidad de llevar la acción de desahucio, a pesar de que algunos coherederos optaron por no unirse al pleito judicial. En este caso los demandantes representan una participación de 8/12 partes del caudal hereditario. Ello pues, como un acto de administración en beneficio de la comunidad hereditaria y no de enajenación, cualquiera de los herederos co-demandantes estaba autorizado a interponer la acción de desahucio.

Como si lo anterior fuera poco, la señora Rivera Galarza fue nombrada legítimamente albacea testamentaria y en el ejercicio de esa facultad instó la acción judicial. Entre sus facultades como albacea testamentaria, está

---

[25] Véase Apéndice XIV del alegato del demandado-apelante, págs. 130-167.

intervenir en los litigios o incidentes que surgen sobre los bienes hereditarios y el proteger los bienes del caudal teniendo que custodiar y tomar preocupaciones para conservar los bienes. "El albaceazgo no es otra cosa que una administración acompañada de un derecho de representación para cumplir ciertas funciones específicas relacionadas con la conservación del caudal hereditario hasta el momento que la herencia sea dividida por los herederos".[26] El albacea, "tiene la función de vigilar sobre la efectividad de las facultades que el testador le concedió en el testamento y sostiene, siendo justo, la validez del deseo del testador en juicio y fuera de él, a los fines de que pueda llevar a cabo su cometido y la facultad adicional de tomar las precauciones necesarias para la conservación y custodia de los bienes hasta el momento en que la herencia del causante sea entregada".[27]

De manera que, la señora Rivera Galarza, por su cargo testamentario, estaba autorizada a llevar a cabo una acción de administración como es el desahucio, sin necesariamente depender de la voluntad de los herederos. Después de todo, su gestión, que incide sobre los bienes de la herencia que está obligada a proteger, está dentro de sus atribuciones y tendrá que dar cuenta a los herederos al culminar la misma.[28]

### III.

Lo anterior dispone también del argumento sobre parte indispensable. La Regla 16 de Procedimiento Civil,[29] dispone que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada".[30] Dicho de otro modo, una parte indispensable es aquella cuyos derechos e intereses podrían quedar afectados, o destruidos por una sentencia dictada estando dicha persona

---

[26] *Paine* v. *Secretario de Hacienda*, 85 DPR 817, 2 (1962) (citando a *Fuentes* v. *Srio. de Hacienda*, 85 DPR 492 (1962).

[27] *Abintestato Marini Pabón*, 107 DPR 433 (1978).

[28] Véase, J. Puig Brutau, Fundamentos de Derecho Civil 438 (Tomo V Vol. 1, Bosch 2da ed., Barcelona 1975).

[29] 32 LPRA Ap. V, R. 16.

[30] *Id.*

ausente del litigio.[31] La doctrina de parte indispensable se inspira, de una parte, en la protección constitucional que impide que persona alguna sea privada de la libertad y propiedad sin un debido proceso de ley[32] y en la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo.[33]

El interés de la parte de que se trate tiene que ser de tal naturaleza que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos a esa parte.[34] De igual forma, el "interés común" al que hace referencia la Regla 16.1 de Procedimiento Civil,[35] tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro.[36]

Al interpretar esta Regla, debemos dar un enfoque pragmático; es decir, una evaluación individual a la luz de las circunstancias particulares que se presenten y no de una formula rígida para determinar su aplicación.[37] Por ello, conviene resaltar que:

> [L]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia.[38]

---

[31] *Cepeda Torres* v. *García Ortiz*, 132 DPR 698 (1993).
[32] Art. II, Sec. 7, Const. PR, LPRA, Tomo 1; *Carrero Suárez* v. *Sánchez López*, 103 DPR 77 (1974).
[33] *Fuentes* v. *Trib. de Distrito*, 73 DPR 959 (1952).
[34] *López García* v. *López García*, 200 DPR 50, 64 (2018) (citando a *Romero* v. *S.L.G. Reyes*, 164 DPR 721, 733 (2005); J.A. CUEVAS SEGARRA, TRATADO DE DERECHO PROCESAL CIVIL, 692 (2da ed., Estados Unidos, Pubs. JTS, 2011).
[35] 32 LPRA Ap. V, R. 16.1
[36] *Pérez Rosa* v. *Morales Rosado*, 172 DPR 216, 223 (2007); *Romero* v. 164 DPR en la pág. 721.
[37] *Romero* v. 164 DPR en la pág. 732.
[38] *López García* v. 200 DPR en las págs. 64-65 (citando a Cuevas Segarra, op. cit., T. II, pág. 695).

Lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente.[39]

Como bien intimó el Foro *a quo,* en el presente caso no faltan partes indispensables. El inmueble objeto de la acción de desahucio pertenece al caudal hereditario indiviso compuesto por la señora Rivera Galarza y sus hermanos. Ocho (8) hermanos coherederos, entre ellos la albacea testamentaria, instaron la demanda de desahucio una vez vencido el contrato de arrendamiento y no pagarse el canon correspondiente. Los cuatro hermanos que no se unieron a la demanda por su propia decisión y que conocen del pleito según las declaraciones juradas sometidas, no constituyen partes indispensables que invalide el trámite judicial. Sencillamente, sus derechos sobre la herencia no forman parte del pleito ni están expuestos a ser afectados adversamente. Solo se busca, como una acción inminentemente administrativa, recuperar la posesión de un inmueble del caudal hereditario en posesión de un tercero precarista y el cobro de los cánones adeudados. Los intereses y derechos de los miembros de la Sucesión que no están en el pleito no se verían afectados de ninguna manera, por lo que no tienen un interés real ni apremiante en el resultado de este pleito, ni sus intereses se verían afectados al pronunciarse sentencia sin su presencia. No erró el Tribunal de Primera Instancia al negarse a desestimar la demanda por falta de parte indispensable.

Contrario es el caso de la reconvención instada por el señor Rivera Figueroa y otros, cuyas alegaciones, que tratan de un alegado acto de enajenación relacionado con el inmueble, sí atentan directamente contra los intereses y derechos de todos los herederos. En cuanto a esta, sí existe falta de parte indispensable que impide continuar con el trámite judicial. Es necesario que todos los herederos estén en el pleito.

---

[39] *Pérez Rosa* v. 172 DPR en la pág. 223 (citando a J.A. CUEVAS SEGARRA, TRATADO DE DERECHO PROCESAL CIVIL 368 (San Juan, Pubs. JTS, 2000, T. I)).

Tampoco le asiste la razón al señor Rivera Figueroa y otros al cuestionar el pago de $7,200 que le impuso el Tribunal de Primera Instancia en la sentencia en concepto de renta. Superada la validez de la acción de desahucio y su procedencia, el cálculo de la cuantía debida por el impago de los cánones de arrendamiento es relativamente simple.

IV.

Finalmente, en cuanto a los honorarios de abogado, sabido es que estos descansan en la sana discreción del tribunal sentenciador.[40] La Regla 44.1 de Procedimiento Civil de 2009,[41] permite a los tribunales imponer el pago de una suma por concepto de honorarios de abogado(a) a una parte que actúa con temeridad durante el proceso judicial.[42] A esos efectos, el inciso (d) de la precitada regla dispone lo siguiente:

> (d) *Honorarios de abogado[(a)]*. —En caso [de] que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado[(a)] que el tribunal entienda correspondan a tal conducta. . . .

Constituye temeridad la actuación terca, obstinada, contumaz y sin fundamentos de un litigante que obliga a la otra parte innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito.[43] La conducta temeraria es una actitud que se proyecta sobre el procedimiento y afecta el buen funcionamiento y administración de la justicia.[44] El requisito de la existencia de una actuación temeraria hace que la Regla 44.1 de Procedimiento Civil de 2009,[45] tenga el propósito de penalizar o sancionar a la parte que incurre en la conducta proscrita por dicha regla.[46]

La determinación de temeridad es un asunto discrecional de los tribunales de primera instancia. Como tribunal apelativo solo podemos intervenir cuando el foro de origen abusa de su discreción.[47] No obstante, se

---

[40] *González Ramos* v. *Pacheco Romero*, 209 DPR 138, 150 (2022).
[41] 32 LPRA Ap. V, R. 44.1
[42] *González Ramos* v. 209 DPR en la pág. 148.
[43] *Id.* pág. 149.
[44] *Id.*
[45] 32 LPRA Ap. V, R. 44.1.
[46] *Id.*
[47] *Id.*

ha relevado del pago de honorarios de abogado(a) a litigantes que pierden un pleito donde hubo controversias fácticas reales que requerían el examen de la prueba testifical y documental.[48]

En este caso, el Tribunal de Primera Instancia evaluó los méritos del pleito y encontró que, la procedencia de la causa de acción era evidente y razonó que la parte perdidosa actuó temerariamente al defenderse. No encontramos que su actuación constituya un abusa de discreción que requiera nuestra intervención.

V.

Por los fundamentos antes expuestos, se *confirma* la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[48] *Santos Bermúdez* v. *Texaco P.R., Inc.*, 123 DPR 351, 357-358 (1989).