Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ELIEZER SANTANA BÁEZ<br><br>APELANTE<br><br>v.<br><br>PHYSICIAN CORRECTIONAL, CUYO DIRECTOR EJECUTIVO ES RAÚL VILLALOBOS<br><br>APELADOS | KLCE202401319 | *Certiorari,* acogido como *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br>Caso Núm. BY2020CV01176<br><br>Sobre: Daños y Perjuicios |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

## SENTENCIA

En San Juan, Puerto Rico, a 19 de marzo de 2025.

### I.

El 5 de diciembre de 2024, el señor Eliezer Santana Báez (en adelante señor Santana Báez o parte apelante) presentó una *Petición de Apelación civil* en la que solicitó que revoquemos una *Resolución y Sentencia* emitida el 31 de octubre de 2024, notificada y archivada en formato digital por el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante TPI o foro primario) el 1 de noviembre del 2024.[1] En el dictamen, el TPI declaró Ha Lugar una *Solicitud de sentencia sumaria* radicada por Physician Correctional (en adelante Physician o parte apelada) en el pleito sobre daños y perjuicios instado por el señor Santana Báez en contra de estos.

Junto con este recurso y en la misma fecha, el apelante presentó una *Declaración en apoyo de solicitud para litigar como indigente in forma pauperis* en la que solicitó que le autorizáramos a litigar como indigente por razón de estar privado de su libertad.

---

[1] Apéndice de la Apelación Civil

El 3 de enero de 2025, la parte apelada radicó una *Moción solicitando desestimación,* en la que alegó que la presentación del recurso apelativo estuvo fuera del término jurisdiccional dispuesto en la Regla 52.2 de Procedimiento Civil, 32 LPRA Ap. V, R.52.2 y que la parte apelante omitió el deber de notificación a las partes expuesto en la Regla 33 del Reglamento del Tribunal de Apelaciones, R. TA 70, 4 LPRA, Ap. XXII-B (2004).

El 14 de enero de 2025, emitimos una Resolución en la que autorizamos al señor Santana Báez a litigar *in forma pauperis* y le concedimos al Departamento de Corección y Rehabilitación un término de cinco (5) días para que informara la fecha en la que el recurso fue entregado por el apelante a la institución carcelaria.

El 23 de enero de 2025, el Departamento de Rehabilitación y Corrección mediante una *Moción en cumplimiento de resolución,* informó a esta Curia que no era posible precisar la fecha en la que el recurso apelativo fue entregado a la institución carcelaria debido a la alta cantidad de correspondencia que el apelante envió al Tribunal de Apelaciones en los meses de noviembre y diciembre del año 2024.

El 29 de enero de 2025, denegamos la solicitud de desestimación presentada por Physician y le concedimos un término para exponer su posición respecto a los méritos del recurso.

El 13 de febrero de 2025, Physician presentó un *Alegato en oposición* en el que solicitó que declaremos No Ha Lugar la *Apelación* por los siguientes fundamentos: (1) el apelante no pudo mostrar prueba contundente que rebatiera la formulación de hechos incontrovertidos en la *Moción de sentencia sumaria,* puesto que no cumplió con la Regla 36.5 de Procedimiento Civil, *supra,* R.36.5; y (2) no existe un remedio en derecho para las alegaciones del apelante, pues la prueba presentada no demuestra un nexo causal

entre alguna acción u omisión de los apelados y el daño presuntamente sufrido por el apelante.

El 18 de febrero de 2025, el señor Santana Báez radicó una *Urgente moción informativa* en la cual solicitó que se tomara conocimiento judicial de presuntas inconsistencias en una *Contestación a un Requirimiento de Admisiones* emitida por la parte apelada en el caso civil núm. BY2023CV07354 ante el Tribunal de Primera Instancia de Bayamón y la declaración jurada del Dr.Devarie presentada junto a la *Moción en solicitud de sentencia sumaria* en el presente caso.

Contando con el beneficio de la comparecencia de ambas partes, damos por perfeccionado el presente recurso. Cabe destacar que la *Resolución y Sentencia* del TPI cuestionada pone fin a todas las controversias en el caso al desestimar con perjuicio la demanda del señor Santana, por consiguiente acogemos el recurso como una Apelación, dado que es el adecuado.

En aras de resolver el recurso, pormenorizamos el trasfondo procesal y fáctico del caso.

## II.

El caso de marras tiene su génesis el 18 de febrero del 2020 cuando el señor Santana Báez radicó una *Demanda civil* contra Physician, cuyo director ejecutivo es el señor Raúl Villalobos.[2] En la demanda, la parte apelante reclamó al foro primario que dictara sentencia encontrando que las acciones de Physician, respecto al tratamiento médico del señor Santana Báez fueron negligentes y torticeras, causándole así un daño digno de una reparación valorada en un millón quinientos mil dólares ($1,500,000). Además, exigió que se le condenara a la parte apelada a sufragar los gastos médicos relacionados al presunto daño causado de manera vitalicia, el pago

---

[2] Entrada núm. 1 del expediente digital del caso en el Sistema Unifrome de Manejo y Administración de Casos (SUMAC)

de honorarios, intereses legales y costas. El apelante adujo que Physician mantuvo un patrón de negligencia desde el 27 de junio de 2019 respecto al suministro del medicamento Neurotin, por el cual él se vió privado injustificadamente del mismo por varios lapsos de tiempo hasta el año 2023. Esto, aún así el paciente contara con una receta del reumatólogo para el mismo desde el 30 de octubre del 2018.  Entre tantas alegaciones, resaltan aquellas en las cuales el apelante adujo que debido a la falta de tratamiento médico durante meses para su dolencia de codos y espalda, fue posteriormente diagnosticado con radiculopatía lumbar. Este afirmó que el diagnóstico posterior fue resultado directo de la supuesta impericia médica en la que incurrió el Dr. Florentino Figueroa al suspenderle la receta de Neurotin el 27 de junio de 2019.

Posteriormente, el 20 de abril de 2020, la parte apelante presentó una *Demanda enmendada civil,* en la que incluyó como parte al Dr. Florentino Figueroa.[3]

El 7 de junio de 2023,  se emplazó a la parte apelada y esta radicó una *Moción solicitando desestimación* el 6 de julio de 2023 bajo el fundamento de que procedía el agotamiento de remedios administrativos previo al procedimiento judicial.[4]

El 21 de septiembre de 2023, el TPI declaró *Sin Lugar* la *Moción solicitando desestimación* por comprender que este era un pleito de daños y perjuicios y no un caso donde se exigieron remedios viables por la  vía administrativa.

El día 24 de octubre de 2023, la parte apelada presentó su *Contestación a la demanda,* negando las alegaciones de impericia médica y sosteniendo que no hubo culpa o negligencia por su parte.[5] Afirmó que el tratamiento ofrecido o suspendido al señor Santana

---

[3] Entrada núm. 12 del expediente digital del caso en el SUMAC.
[4] Apéndice de la *Apelación civil,* Moción solicitando desestimación.
[5] Íd., *Contestación a demanda.*

Báez se ajusto a las recomendaciones de la comunidad médica y a las disposiciones del "United States Food and Drug Administration" (FDA).

El 16 de julio de 2024, Physician radicó una *Moción en solicitud de sentencia sumaria* en la que manisfestó que en el presente caso no existía controversia real con relación a los hechos materiales del mismo y procedía que se dictara sentencia sumaria en contra de la parte apelante.[6] Esta moción se acompañó con una declaración jurada por el Dr. Marcos Devarie Díaz, Director Médico del Complejo o Correccional de Bayamón (en adelante Dr. Díaz) y las distintas directrices del FDA para el medicamento Neurotin. El Dr. Díaz, bajo juramento, consignó lo siguente:

> [...] 4. El día 30 de octubre de 2018, el señor Santana Báez comenzó a recibir el medicamento Neurotin 400 mg dos veces al día, recetado por el reumatólogo Dr. Juan M. Rodríguez Rivera para una dolencia bilateral en los codos.
>
> 5. El día 27 de junio de 2019, el internista de Physician Correctional, Dr. Florentino Figueroa decidió no continuar adminsitrándole al demandante el medicamento Neurotin debido a que el reumatólogo no hizo constar ningún diagn[ó]stico específico y procedió a referir al paciente a un fisiatra para la correspondiente evaluación. La decisión del Dr. Figueroa de suspenderle el Neurotin al paciente estuvo basada, además, en las indicaciones del Food and Drug Administration (FDA) que establecen que este medicamento es indicado primordialmente para neuralgia en adultos y para tratamiento de epilepsia en adultos y menores.
>
> 6. El día 15 de noviembre de 2019, el demandante tuvo cita con el fisiatra de Physician Correctional Dr. Joezer Lugo, quejandose de dolor en el área lumbar. El Dr. Lugo le recet[ó] el medicamento nuevamente por treinta (30) días en dosis menor de una capsula de 300mg diaria hasta el día 8 de diciembre de 2019. Además, el Dr. Lugo le recetó al señor Santana Báez diez (10) terapias físicas las cuales este estuvo tomando en las siguientes fechas: 5 de noviembre de 2019, 12 de noviembre de 2019, 21 de noviembre de 2019, 26 de noviembre de 2019, 3 de diciembre de 2019, 5 de diciembre de 2019, 12 de diciembre de 2019, 17 de diciembre de 2019 y 16 de enero de 2020, 21 de enero de 2020 y 23 de enero de 2020. Surge del récord médico del paciente que este manifestó que había sentido mejoría en su condición lumbar mientras estuvo tomando terapias físicas.
>
> 7. El día 11 de febrero de 2020, el internista Dr. Figueroa hizo constar en el récord médico que el paciente padecía de una radiculopatía lumbar según lo evidenciaba un estudio

---

[6] Íd., *Moción en solicitud de sentencia sumaria.*

electro-diagnóstico realizado. El Dr. Figueroa le recet[ó] al paciente nuevamente el medicamento Neurotin en una dosis de 300mg. Luego de evaluar el caso del señor Santana Báez y a base del criterio m[é]dico de nuestros facultativos se decidió volver a suministrarle el medicamento desde el día 19 de septiembre de 2020 en la misma dosis de 400mg dos veces al día.

8. El día 15 de abril de 2023, se le aument[ó] la dosis del medicamento al paciente a 600mg dos veces al día. Esta dosis la ha estado recibiendo el paciente hasta el día de hoy ininterrumpidamente.

9. Es importante indicar que el Neurotin es un medicamento paleativo que únicamente sirve el propósito de desensibilizar al paciente para que no sienta dolor en el área lumbar. Este medicamento de ninguna manera revierte la condición lumbar que sufre el paciente.

10. En el caso del señor Santana Báez el reumatológo externo Dr. Juan M. Rodríguez Rivera le recet[ó] el Neurotin para una dolencia en sus codos. Posteriormente, el Dr. Florentino Figueroa, internista de Physician Correctional quien era el m[é]dico de cabecera del demandante, decidió dentro de su criterio m[é]dico suspender el medicamento hasta que fuera evaluado por el fisiatra Dr. Joezer Lugo de una condición de dolor en el área lumbar. Posteriormente, luego de evaluados los resultados de estudios electro-diagnósticos que revelaron una condición de radiculopatía lumbar, el Dr. Figueroa decidió reinstalar el Neurotin para dicha condición. La acción del Dr. Figueroa de suspender el Neurotin al demandante fue tomada dentro de su criterio m[é]dico y apoyada por las indicaciones de la FDA antes mencionadas. Durante el tiempo que se le suspendió el medicamento el paciente fue sometido a tratamiento alterno consistente en terapias físicas las cuales según él mismo indicaba habían mejorado su condición.[7]

Por su parte, el 9 de agosto de 2024, el señor Santana Báez radicó una moción titulada "*Réplica a moción solicitando sentencia sumaria*"[8] en la que se limitó a mencionar hechos expuestos en una sentencia de un panel hermano de este tribunal en el caso KLRA2020-00036[9]. En la sentencia de aquel caso se dilucidó la academicidad de una controversia respecto a la negatoria del Departamento de Corrección y Rehabilitación en suministrar el medicamento antes mencionado al señor Santana Báez. A su vez, este planteó que existían hechos controvertidos, entre ellos: (1) la alegación sobre la falta de diagnóstico en el expediente por el reumatólogo; (2) la alegación sobre las terapias físicas como

---

[7] Íd., *Moción en solicitud de sentencia sumaria*
[8] Entrada Núm. 70 del expediente digital del caso en el SUMAC.
[9] Apéndice de la *Apelación Civil*, *Sentencia*.

tratamiento alterno al Neurotin (3) que el demandante ha recibido el tratamiento adecuado ininterrumpidamente hasta la fecha de hoy y (4) que los apelados no incurrieron en negligencia al suspender el tratamiento a causa de una directriz del FDA. Cabe destacar, como anejos a la *Oposición de Sentencia Sumaria* el señor Santana Báez se delimitó a presentar documentos relativos a varios recursos administrativos que este instó entre las fechas del 1 de agosto de 2019 al 1 de diciembre de 2020, además de varios correos electrónicos en los cuales presuntamente una amiga de este comunica a una empleada de Physician la suspensión del tratamiento del apelante.

Tras varias mociones presentadas por el señor Santana Báez, el foro de instancia declaró Ha Lugar la *Solicitud de sentencia sumaria.* En consecuencia, desestimó con perjuicio la demanda de daños y perjuicios presentada por la parte apelante.

En particular, el TPI emitió las siguientes determinaciones de hechos:

1. El demandante Eliezer Santana Báez se encuentra confinado en la Institución Bayamón 501 del Complejo Correccional de Bayamón extinguiendo una sentencia bajo la supervisión del Departamento de Correción y Rehabilitación (DCR).
2. El día 30 de octubre de 2018, el señor Santana Báez aquí demandante comenzó a recibir el medicamento Neurotin 400mg dos veces al día, el cual le fue recetado por el reumatólogo externo subcontratado por la parte demandada Physician Correctional, para una dolencia bilateral en los codos.
3. El día 27 de junio de 2019, el internista de Physician Correctional, Dr. Florentino Figueroa examinó al demandante y decidió no continuar administrándole el medicamento Neurotin debido a que el Dr. Rodríguez Rivera no hizo constar ningún diagnóstico en específico que justificara continuar administrando el medicamento indefinidamente. La decisión del Dr. Figueroa de suspenderle el Neurotin al paciente, estuvo basada, además, en las indicaciones del "Food and Drug Administration" (FDA) que establecen que este medicamento es indicado primordialmente para neuralgia en adultos y para tratamiento de epilepsia en adultos y menores.
4. El día 15 de noviembre de 2019, el demandante tuvo cita con el fisiatra de Physician Correctional Dr. Joezer Lugo, quejándose de dolor en el área lumbar. El Dr. Lugo le recetó el medicamento nuevamente por treinta (30) días en una dosis menor de una cápsula de 300 mg diaria

hasta el 8 de diciembre de 2019. Además, durante ese tiempo el Dr. Lugo le ordenó al señor Santana Báez diez (10) terapias físicas las cuales este estuvo tomando en las siguientes fechas: 5 de noviembre de 2019, 12 de noviembre de 2019, 21 de noviembre de 2019, 26 de noviembre de 2019, 3 de diciembre de 2019, 5 de diciembre de 2019, 12 de diciembre de 2019, 17 de diciembre de 2019 y 16 de enero de 2020, 21 de enero de 2020 y 23 de enero de 2020. Según la declaración jurada del Dr. Devarie, anejada a la Moción de sentencia sumaria, surge del récord médico del paciente que este manifestó que había sentido mejoría en su condición lumbar mientras estuvo tomando las terapias físicas.

5. El día 11 de febrero de 2020, el internista Dr. Figueroa hizo constar en el récord médico que el paciente padecía de una radiculopatía lumbar según lo evidenciaba un estudio electro-diagnóstico realizado y ordenado por el fisiatra Dr. Lugo. El Dr. Figueroa luego de evaluar el diagnóstico específico de una radiculopatía lumbar le recetó al paciente nuevamente el medicamento Neurotin en una dosis de 300mg. Luego de evaluar el caso del señor Santana Báez y a base del criterio médico de los facultativos de la parte demandada decidieron volver a suministrarle el medicamento desde el día 19 de septiembre de 2020, en la misma dosis de 400mg dos veces al día.

6. El día 15 de abril de 2023, se le aumentó la dosis del medicamento al paciente a 600mg dos veces al día. Esta dosis la ha estado recibiendo el paciente hasta el día de hoy ininterrumpidamente.[10]

Inconforme con el dictamen, el 5 de diciembre de 2024, el señor Santana Báez presentó una *Petición de apelación* a esta Curia y le imputó a TPI la comisión del siguiente error:

Erró el Tribunal de Primera Instancia y abusó de su discreción al determinar que no hay controversia de hechos materiales real y sustanciales y que por tanto, procedía resolver el caso por vía sumaria; no tomando en cuenta e ignorando hechos materiales que no podían ser pasados por alto y que impedían por tanto, resolver el caso por vía sumaria, por estar presentes los elementos de hechos pertinentes que demuestra la existencia de una controversia real y sustancial que debe dilucidarse en juicio.

Pormenorizando el trámite procesal pertinente a la controversia presentada por la *Petición de apelación* de epígrafe, en adelante consignamos el derecho aplicable.

### III.

En nuestro ordenamiento, el mecanismo de Sentencia Sumaria está regido por la Regla 36 de Procedimiento Civil de 2009, *supra,* R.36. La moción de sentencia sumaria es aquella en que se

---

[10] Íd, *Resolución y Sentencia.*

solicita que se dicte sentencia a favor del promovente a base de la prueba que a la moción se le acompaña, sin necesidad de que se celebre vista en su fondo. *ELA v. Cole Vázquez,* 164 DPR 608 (2005). El promovente de este recurso deberá demostrar que: (1) no es necesario celebrar una vista; (2) el demandante no cuenta con evidencia para probar algún hecho sustancial; y (3) procede como cuestión de derecho. R. Hernández Colón, *La Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 2017, pág. 317.

La sentencia sumaria "[p]ersigue el propósito de obtener un remedio rápido y eficaz por vía de sentencia, dispensando del juicio cuando la parte que la promueve puede acreditar al tribunal que no existe controversia genuina y sustancial con relación a los hechos esenciales y pertinentes a la norma jurídica a aplicar en el litigio." Hernández Colón*, op. cit,* pág. 315. Esta es una vía para conseguir soluciones justas, rápidas y económicas a distintos pleitos de manera que se eviten los juicios inútiles, así como gastos de tiempo y dinero que ello conlleva para las partes y el tribunal. *Ramos Pérez v. Univisión Puerto Rico Inc.,* 178 DPR 200 (2010)

Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Íd. Además, la controversia sobre éste debe ser de tal magnitud que justifique utilizar la maquinaria del Estado para llevar a cabo un juicio en su fondo con fines de dilucidar la misma. Es decir, debe existir suficiente duda en el juzgador como para continuar con el proceso adversativo en los tribunales, e imponer a las partes el peso arduo de probar sus méritos en el juicio en su fondo, con la finalidad de llegar a la verdad sobre la controversia esbozada.

La Regla 36 de Procedimiento Civil, *supra, R.36* permite que cualesquiera de las partes en un litigio solicite sentencia sumaria a su favor. Ahora bien, la parte contra la cual se presenta una moción de sentencia sumaria tiene el deber de defenderse de la misma

refutando la prueba presentada mediante una igual de fehaciente que la presentada por su contra parte. ***Sánchez Maldonado v. Autoridad de los Puertos,*** 153 DPR 559 (2001). "Para sostener [o refutar] la moción de sentencia sumaria pueden presentarse, entre otras, las siguientes piezas de evidencia: certificaciones, documentos públicos, admisiones de la parte contraria, deposiciones, contestaciones a interrogatorios, declaraciones juradas o affidavits, y hasta prueba oral." *Hernández Colón, op. cit.* pág.318.

La parte contra quien se promueve una moción de sentencia sumaria no puede cruzarse de brazos y descansar en sus alegaciones, sino que tiene que refutar los hechos alegados mediante presentación de prueba admisible. ***Luan Investment v. Rexach Construction Co.,*** 152 DPR 652 (2000) Es decir:

> [l]a parte contraria no podrá descansar solamente en las aseveraciones o repulsas contenidas en sus alegaciones, sino que vendrá obligada a contestar de forma tan detallada y específica, como lo hubiera hecho la parte promovente, exponiendo aquellos hechos materiales que cree que intenta probar, y si no contestara bajo juramento, deberá dictarse sentencia en su contra**. *Fuentes v. Secretario de Hacienda,*** 85 DPR 492 (1962).

Para prevalecer en este tipo de moción es necesario demostrar que se cuenta con evidencia aceptable, admisible y suficiente para ser presentada en el juicio. ***Jusino Figueroa v. Walgreens of San Patricio, Inc.***, 155 DPR 560 (2001). La parte no puede oponerse a la moción basándose únicamente en alegaciones expuestas en la demanda o cualquier otro escrito que no sea admisible en un juicio. No basta con establecer, sin fundamento evidenciario, que existe controversia o duda sobre los hechos. Recordemos, "[c]ualquier duda no es suficiente para derrotarla [la sentencia sumaria] sino que tiene que ser una duda que permita concluir que existe una controversia real y sustancial sobre hechos relevantes y pertinentes." J. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., JTS, T. III, pág. 1040. Si se sostuviera que no procede una

sentencia sumaria por el solo hecho de que la demanda exponga hechos constitutivos de una causa de acción se estaría frustrando el propósito mismo de la sentencia sumaria. *Pineiro v. Sucn. A. Cortes*, 83 DPR 685 (1961).

> [D]el reciente desarrollo doctrinario pertinente al mecanismo de la sentencia sumaria, transluce que a partir de *SLG Zapata- Rivera v. J.F. Montalvo*, 189 DPR 414, la norma se ha tornado más rigurosa para quien pretende oponerse a que su caso se resuelva por la vía sumaria. Así pues, ante una moción de sentencia sumaria bien fundamentada, el que se opone a ella tiene el deber ineludible de controvertir los hechos fehacientemente, ya que de lo contrario, corre el riesgo de verse privado de "su día en corte"." *PR Recovery & Dev. JV, LLC por Island Portfolio Servs., LLC v. Ruiz Gonzalez,* TA KLAN202100019 (2021)

Si la parte contra la que se invoca la sentencia sumaria, omite su deber de refutar la moción con prueba fehaciente el tribunal deberá, siempre que proceda, dictar sentencia sumaria en su contra. Esto, ya que no desvirtuó la presunción de incontroversia sobre los hechos, derivada de la prueba documental que presentó la parte promovente. Es decir, si los hechos no estan en controversia y el pleito solo presenta una cuestión de derecho, esta en orden disponer del asunto mediante sentencia sumaria. *Pérez v. Concepción,* 104 DPR 83 (1975).

Ahora bien, una determinación sumaria está cobijada bajo la presunción de corrección de los procedimientos que debe ser rebatida por el apelante. *Cuevas Segarra*, op. cit. pág. 1042. Aún así, nuestra jurisprudencia ha establecido que el estándar de revisión de sentencias sumarias en foros apelativos debe ser uno *de novo*, manteniendo el análisis del expediente de la manera más favorable para quien se opone a la misma. En *Meléndez González v. M. Cuebas,* 193 DPR 100 (2015), el Tribunal Supremo estipuló los criterios a seguir para la revisión de los tribunales apelativos respecto a sentencias sumarias de los tribunales inferiores. En lo pertinente se dispuso que el Tribunal examinador debe:

1. Examinar ***de novo*** el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil, *supra* y la jurisprudencia le exigen al foro primario;

2. Revisar que tanto la moción de sentencia sumaria como su oposición cumplan con los requisitos de forma codificados en la referida Regla 36, *supra*;

3. Revisar si en realidad existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos;

4. y de encontrar que los hechos materiales realmente están incontrovertidos, debe proceder a revisar ***de novo*** si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia. ***Meléndez González v. M. Cuebas, Inc.,*** supra.

Con este estándar presente, pasemos a revisar si erró el foro primario al declarar **Ha Lugar** la *Moción de sentencia sumaria* presentada por Physician Correctional y como consecuencia desestimar la demanda con perjuicio.

## IV.

En el caso ante nos, el apelante esboza como error que el TPI haya acogido a la moción de sentencia sumaria presentada por los apelados. Este arguye que no procedía declarar Ha Lugar este recurso ya que existe controversia real sobre los siguentes hechos materiales del caso: (1) la falta de diagnóstico en el expediente por parte del reumatólogo, (2) las fechas en las que se le dejó de despachar el fármaco Neurotin al apelante, (3) la alegación de que se le ofreció un régimen de terapias físicas como tratamiento alterno al medicamento recetado y (4) que la suspensión del fármaco fue resultado de lo estipulado en las directrices del FDA para dicho medicamento.

A tenor con el derecho aplicable pormenorizado anteriormente, nuestra revisión de una sentencia sumaria emitida por un tribunal inferior debe ser **de novo**, aunque estrictamente limitada a la prueba documental presentada en este. Conforme a ello procedemos a revisar la sentencia sumaria apelada.

Tras un análisis objetivo, sereno y cuidadoso del expediente resolvemos que el TPI no cometió el error imputado. Los hechos

formulados en la sentencia sumaria están ampliamente apoyados en prueba documental que obra en el expediente y esta no fue refutada adecuadamente por la parte apelante según lo exige nuestro ordenamiento jurídico.

La Regla 36.3(e) de Procedimiento Civil, *supra*, R.36(e), dispone ciertos requisitos de forma que deben cumplir las partes que se enfrentan a una sentencia sumaria. En particular la parte que se oponga a una petición de sentenciar sumariamente, debe presentar en su escrito de oposición evidencia admisible en juicio que demuestre la existencia de una controversia real sobre hechos materiales en el caso. En otras palabras, debe rebatir la presunción de veracidad generada por la prueba debidamente presentada junto con la Moción a la cual se opone. El oponente no puede descansar llanamente en simples alegaciones. Este debe presentar prueba igual de fehaciente que la expuesta por su contraparte, con el fin de crear una duda razonable.

Según los hechos de este caso, Physician al presentar la *Moción de sentencia sumaria*, anejó tanto las directrices del FDA para el medicamento Neurotin como una declaración jurada por el Dr. Devarie, director médico del Complejo Correccional de Bayamón, donde se encuentra el apelante. Mediante esta documentación Physician mostró correctamente al TPI prueba fehaciente de que no existía controversia real sobre los motivos para la suspención del tratamiento al señor Santana Báez. Evidenciaron que el estándar de la comunidad médica dispone que el medicamento Neurotin debe administrarse únicamente en casos de neuralgia y epilepsia, debido a sus efectos desensibilizadores que inducen a la dependencia. Además, en virtud de la declaración jurada, mostraron que al percatarse que el expediente del señor Santana Báez no contenía un diagnóstico de neuralgia o epilepsia, el Dr. Figueroa actuó conforme a lo que se esperaría de un médico prudente y razonable: suspendió

el suministro del medicamento y ofreció un tratamiento alternativo hasta que el paciente fuera reevaluado y se determinara el diagnóstico correspondiente.

Ante esta prueba, el apelante en su escrito de oposición optó por refutar la misma utilizando únicamente documentación de las múltiples querellas presentadas por él a la división de remedios administrativos del Departamento de Correción y algunos mensajes de correo electrónico entre una presunta amiga de él y una empleada de Physician.[11] Queda claro que ninguno de estos documentos controvierte lo declarado bajo juramento por el Dr. Davarie. La Regla 36.3 de Procedimiento Civil, *supra*, R. 36.3, es clara, la parte opositora debe mostrar evidencia admisible (declaraciones juradas, deposiciones, interrogatorios y etc.) con la que pueda crear una duda sustancial sobre los hechos pertinentes a la controversia. La prueba por la que optó el apelante, más allá de alegaciones conclusorias, no logró crear duda suficiente sobre lo declarado bajo juramento por el director médico o en su defecto, que existe una negligencia por parte de la apelada. El promovido "no puede valerse de la lacónica aseveración de que los hechos están en controversia". ***Ramos Pérez v. Univisión,*** supra, y evitar controvertirlos. No podemos superponer a una declaración jurada o prueba médica, meras alegaciones de la parte.

En vista de que la parte apelante no controvirtió los hechos según lo exige nuestro ordenamiento jurídico, entendemos el foro inferior no cometió el error imputado y actuó correctamente al dictar Ha Lugar la *Moción de sentencia sumaria* y desestimar la demanda con perjuicio.

---

[11] Estos correos electrónicos poco muestran el contenido completo de las comunicaciones, los nombres de los mensajeros o tan siquiera las fechas en las que se enviaron.

## V.

Por los fundamentos antes expuestos, se confirma la *Resolución* y *Sentencia* apelada.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones